**W. James CONARD et al.**

v.

**James E. GOOLSBY et al.**

**No. EC 72–98–K.**

United States District Court,
N. D. Mississippi, E. D.

Oct. 10, 1972.

Fred L. Banks, Jr., Jackson, Miss., for plaintiffs.

Shields Sims, Columbus, Miss., for defendants.

## MEMORANDUM OPINION

KEADY, Chief Judge.

This class action, based upon 42 U.S.C. § 1983, was instituted by three male public school teachers of the black race and all others similarly situated against the superintendent and Board of Trustees of the Columbus Municipal Separate School District, Columbus, Mississippi. Federal court juridiction is founded upon 28 U.S.C. § 1343(3) and (4).

By their complaint, plaintiffs allege that defendants, acting under color of state law, had promulgated a policy of denying employment to teachers who refuse to conform with certain personal appearance regulations contained in a locally adopted and published "code of conduct". Plaintiffs urge that the code, and defendants' actions thereunder, impose arbitrary, capricious, burdensome and humiliating restrictions relating to moustaches, sideburns, beards, and hair of teachers as a condition of initial or continued employment in the Columbus public schools; that such grooming restrictions are racially discriminatory as to black males, who, as a matter of custom, tradition and racial identity, are more prone to wear moustaches, beards and longer sideburns than are whites; and that defendants' refusal to continue to employ plaintiffs solely because of their noncompliance with arbitrary and discriminatory grooming regulations violates plaintiffs' constitutional rights to privacy, due process and equal protection under the First, Fifth and Fourteenth Amendments.

On September 22, 1972, the court conducted an evidentiary hearing on plaintiffs' motion for a preliminary injunction. The evidence adduced disclosed that on July 31, 1972, the School Board adopted a code of conduct effective for the 1972–73 school year, part II of which delineated personal appearance regulations for both boy and girl students. Although the personal appearance section of the code was specifically directed to students, at the hearing defendants insisted that the Board had contemplated the applicability of the code to students and teachers alike,[1] and that certain language in part IV of the code entitled "Discipline Policy" had been inserted to insure that teachers would be equally subject to the grooming restrictions in part II during the 1972–73 academic year.[2]

The pertinent portions of part II of the code, which specifically relate to boy students, contained sections governing beards, mustaches, and sideburns, as follows:

"(b) *Boys:*

1. Beards are prohibited.

2. A moustache may be worn provided it is neatly trimmed, does not extend below the bottom of the top lip and does not extend beyond the corners of the mouth.

\* \* \* \* \* \*

4. Sideburns may be worn to a length not below the bottom of the ear lobe, must be neatly trimmed, and cannot be bushy."

Each of the named plaintiffs has taught in the Columbus schools for the past six years. W. James Conard, 29 years, is a mathematics and algebra

---

1. Nor had the 1971–72 code specifically included restrictions on teacher grooming. At the hearing, however, defendants asserted that the Board had been particularly anxious to include teachers within the scope of restrictions for the 1972–73 academic year because of complaints by some students and parents during the previous year that teachers were not held to the same grooming standards as those imposed on students.

2. The inserted language in part IV reads as follows: "The principals, counselors and all classroom teachers continue to have a responsibility *to teach by precept and example* good conduct, *good grooming*, and positive attitudes toward learning." (Emphasis added.)

teacher in S. D. Lee High School, and currently wears a moustache slightly extending below the corners of the mouth, a small beard or goatee, and sideburns which do not extend below the bottom of the ear lobe. Ezra Baker, 28 years, and a civics teacher in Lee High School, has a moustache slightly extending below the corners of the mouth, a faint growth of hair below the bottom lip, and sideburns protruding just below the bottom of the ear lobe. F. A. Yates, 28 years, also a mathematics teacher in Lee High School, wears his moustache extending beyond the corners of the mouth and sideburns below the ear lobe, but has no beard or facial hair below the lower lip. Plaintiffs have worn these facial hair styles for years, although Conard and Baker in recent months reduced the length of their sideburns in an unsuccessful effort to comply with the students' dress code. On the witness stand, each man expressed feelings of chagrin, embarrassment and humiliation in making the requisite alterations to their appearance and, therefore, refused to conform to the specific restrictions placed on boy students by the code. Without question, each of the plaintiffs would be in good standing as a teacher in the Columbus school system had he strictly complied with the provisions of (b) 1, 2 and 4 above.

The proof at the hearing showed that, prior to their suspension, plaintiffs had been verbally warned by their principal and by the superintendent that they were not in compliance with the grooming standards of the code. The new restrictions had been explained at faculty meetings prior to opening of the school term, and all male teachers in the system, except the three plaintiffs, brought themselves into compliance. On September 7, Superintendent Goolsby notified plaintiffs by certified mail that they

had been suspended from their duties as teachers for their refusal to comply with part II of the code, subparagraphs 2(b), 1, 2 and 4. The Superintendent advised plaintiffs that they would be afforded a hearing before the School Board on September 18; and if, prior to that date, plaintiffs fully complied with the grooming regulations, they would be reinstated. Plaintiffs chose not to appear at the Board hearing, and through their counsel notified Superintendent Goolsby that, although their facial hair styles were "slightly out of compliance" with the code, they nevertheless were "properly groomed in accordance with standards generally prevailing in the community." Asserting that the code was an illegal invasion of their right of privacy, plaintiffs' attorney threatened litigation unless the Board exercised leniency in applying the code restrictions. The Board thus had no occasion at its September 18 meeting to interpret the applicability of the code to teachers, and, upon failure of plaintiffs to appear, summarily discharged them from teaching contracts because of their failure to abide by the Board's regulations.[3]

Despite the testimony of the superintendent and several school trustees that the 1972–73 grooming regulations, particularly 2(b) 1, 2 and 4, had been adopted with the intent that they apply to male teachers, this court noted an apparent ambiguity in the language of the code, and that it might reasonably be construed as requiring good grooming of teachers, without conforming to the specific restrictions set for boy students. Additionally, assuming the Board's intent that specific grooming regulations should apply to teachers as well as students, the court expressed its concern that the Board had not had the opportunity to conduct a factual hearing with plaintiffs to determine whether

---

3. Each plaintiff, in February 1972, had indicated a desire for reemployment and had signified his willingness "to abide by the policies and regulations of the Board of Education and the Administration." Baker and Yates were delivered reemployment contracts by Superintendent Gools-by, while Conard's contract was withheld pending moustache compliance. The Board adopted the current code July 31, 1972, upon the Superintendent's recommendation without consulting principals or classroom teachers.

plaintiffs were indeed in violation of the Board's own interpretation of the code's standards. Therefore, this court reserved ruling on plaintiffs' motion for preliminary injunction pending final administrative hearing and decision by the Board. The court also reserved ruling on defendants' motion for summary judgment which had been filed on the day of the evidentiary hearing.

The Board scheduled another hearing for October 9, at which plaintiffs were present and presented evidence. At the conclusion of the hearing, the Board unanimously concluded that specific code provisions, 2(b) 1, 2 and 4, were applicable to male teachers and plaintiffs were not in compliance therewith. Consequently, the prior decision to suspend and terminate plaintiffs as classroom teachers was upheld.

The parties have agreed that they have no additional proof to present, and the court may consider the record made at the initial evidentiary hearing as one for final hearing on the merits. Thus, the court now addresses itself to all issues in the case, including those raised by defendants' motion for summary judgment. Plaintiffs seek reinstatement, award of back pay, damages, as well as attorney fees and costs for bringing this action.

Plaintiffs' most serious contention is that the Board's personal appearance regulations, when made applicable to teachers, are an arbitrary denial of substantive due process and also violate the Equal Protection Clause under either the traditional standard of review, in that they constitute a classification having no rational relation to any legitimate governmental objective of a school board in the operation of public schools, or the stringent review, since the restrictions amount to racial classifications inherently suspect which burden blacks more heavily than whites and do not serve a compelling state interest. Defendants argue that there is no constitutional right in anyone to teach in public schools, that the School Board has power and authority to adopt regulations to maintain discipline and good order in its schools, that the promulgation of grooming regulations applicable to teachers and students alike is a legitimate exercise of that power, and the personal appearance regulations under attack have been administered in a racially nondiscriminatory manner and uniformly applied to both white and black teachers.

In support of their position, defendants cite the recent en banc decision of the Fifth Circuit in Karr v. Schmidt, 460 F.2d 609 (5 Cir. 1972), contending that it clearly dictates the rule to be followed in the present case. That is, within a public high school setting, there is no constitutionally protected right to wear one's hair (presumably including one's moustache, sideburns, or beard) in a length, manner or style which suits the wearer; thus, it is argued that plaintiffs' complaint should be summarily dismissed for failure to state a claim for which relief can be granted. Alternatively, defendants maintain that even assuming plaintiffs have a constitutional right to wear hair, moustaches, sideburns, and beards as they please, the Fifth Circuit decision in Ferrell v. Dallas Independent School District, 392 F.2d 697 (5 Cir. 1968), cert. denied 393 U.S. 856, 89 S.Ct. 98, 21 L.Ed.2d 125 dictates that the grooming regulations in controversy here be upheld as a legitimate state interest reasonably calculated to preserve discipline and order and to prevent student resentment. Consequently, a substantial portion of defendants' evidence at the hearing before this court on September 22 was directed toward proving that one year's experience with a student dress code was a sufficient justification for making it applicable to members of the faculty.

We do not view the *Karr* decision to be here controlling since in that case the court adopted a per se rule which recognized the constitutional validity of high school grooming and hair regulations applicable to high school students only.

The court specifically disavowed that this rule was to apply to adults:

"It seems to us patently absurd to suggest that our decision here today provides a basis for sustaining a state regulation requiring conventional haircuts for the general adult population. See Richards v. Thurston, 1 Cir. 1970, 424 F.2d 1281, 1285, & n. 10; see also Ferrell v. Dallas Indep. School District . . . (dissenting opinion of Mr. Justice Douglas.)" 460 F.2d at Note 13, p. 615.

Of real concern to the *Karr* court was the obvious dilemma which faced federal district courts in their application of *Ferrell*.[4] After *Ferrell*, in cases challenging the constitutional validity of high school grooming regulations, district courts were necessarily required to hold lengthy evidentiary hearings at which a plethora of witnesses was often proffered by litigants to prove that a particular high school regulation was or was not reasonably related to a legitimate state interest. Although arising from essentially similar factual settings, these cases were often decided with strikingly dissimilar results. To avoid such a notable, yet inevitable, variance in judicial fact-finding in cases involving high school grooming regulations, the *Karr* court, by a closely divided vote of the judges, chose to negate the necessity for an evidentiary hearing by announcing that high school student grooming regulations were constitutionally valid per se.

The *Karr* decision is particularly relevant to the case at bar since this court is now faced with a deluge of conflicting and largely subjective opinion evidence from teachers, school officials and administrators and students concerning the reasonableness and effect of the grooming code in question as applied to teachers. Although, as previously indicated, *Karr's* per se rule is not appropriate in cases challenging the constitutional validity of adult hair regulations, we are unwilling to revert to a *Ferrell*-type judicial fact-finding which is based far less on objectivity than on the opinions and notions of students, school personnel, administrators, school boards, and federal district judges.

The principle applicable to the regulation of hair styles of the general adult population has emerged from a recent Fifth Circuit decision handed down since the date of our preliminary hearing. In Lansdale v. Tyler Junior College, 470 F.2d 659 (5 Cir. 1972), the Court limited the per se rule of *Karr* to students enrolled in high school (and lower grades), and struck down grooming regulations for college students whom the Court recognized as part of the adult population. Judge Clark, speaking for the majority, declared:

"Today the court affirms that the adult's constitutional right to wear his hair as he chooses supersedes the State's right to intrude."

. . . . . .

"In the absence of a showing that unusual conditions exist, the regulation of the length or style of a college student's hair is irrelevant to any legitimate college administrative interest and any such regulation creates an arbitrary classification of college students." At pp. 663, 664.

Necessarily, teachers, although working in a high school environment, must be dealt with as part of the general adult population, and not as students. None of the disciplinary or administrative factors which were the basis of *Karr's* rule justifying plenary regulation of hair styles by school authorities over students of pre-college age are appropriate to members of the faculty.

 Thus, we hold that the logic in *Lansdale* is dispositive of the case

---

4. In *Ferrell* the Fifth Circuit held that, assuming the right of a high school student to wear his hair as he pleases is a constitutionally protected one, the compelling state interest of school authorities to maintain an effective and efficient school system may be sufficient to justify a high school regulation limiting such a right.

sub judice, that is, a high school grooming regulation which limits the length and style of an adult teacher's hair, including his moustache, goatee or beard is irrelevant to any legitimate state interest. We readily recognize that the vogue of an adult to wear a moustache, beard, goatee, or sideburns in a particular style or length that he desires is a personal choice which determines one's own appearance; and a state sanction regulation which prescribes generally the grooming habits of adults as a condition of public employment, unrelated to one's ability to perform his work, can only be viewed with close judicial scrutiny. The issue is not whether an adult's hair style is a right to be equated with fundamental freedom, but the power of the State to legislate in such a field. Under settled constitutional principles, we find that such regulations, which are of general import, create an arbitrary and capricious classification, devoid of logic and rationality, and plainly offend both substantive due process and equal protection guaranteed by the Fourteenth Amendment. Plaintiffs did not lose these rights by signifying their willingness to abide by the Board's rule and regulations as a condition of reemployment, as the waiver of constitutional rights may not be a condition of public employment.

We recognize that public education officials may have authority in the rare, extraordinary case to delimit the "hirsute adornment" of a particular teacher. If a particular teacher's grooming creates extraordinary conditions which clearly deter his ability to teach or the ability of his pupils to learn, then an administrative action reasonably calculated to rectify the problem may be appropriate. In the present case, however, defendants offered no proof that plaintiffs' grooming habits were carried to an extreme, or that their personal appearances were disruptive.[5] That some

students complained that teachers should be subject to the same regulations as students is a puerile consideration, wholly lacking in substance. Student resentment, if real, may be met in ways more appropriate than to require teachers to conform to student regulations. We endorse the following reasoning of the Court in Finot v. Pasadena City Board of Education, 250 Cal.App.2d 189, 58 Cal.Rptr. 520 (1967):

"The only benefit that the public gains from this restraint on the appearance of male classroom teachers at . . . High School is the probable easier enforcement of the school rule against male students wearing beards. In our opinion, though, this benefit does not outweigh the resulting impairment of appellant's constitutional right to wear such a beard while teaching in a classroom at . . . High School, and certainly, so far as the effective enforcement of the school rule against male students wearing beards is concerned, there are clearly other alternatives open to respondents in the way of deterrents, sanctions and penalties against male students themselves which are less subversive of appellant's constitutional right than is the administrative policy in question." At 528.

Since the Columbus personal appearance regulations have been invalidated on the grounds of substantive due process and denial of equal protection of the laws under traditional standards of rationality, we need not consider the alternate contention that the regulations create inherently suspect racial classifications, and, therefore, are subject to strict scrutiny. Because of the rationale of our holding, we also forego any discussion of plaintiffs' First Amendment claims.

Plaintiffs are, therefore, entitled to reinstatement to their teaching positions, without demotion, loss, or penalty of any kind, and should, of course, re-

---

5. Since the suspension of plaintiffs, approximately 200 black students participated in a boycott of Lee High School. The boycott was clearly motivated, however, by the action of the Board and was in no way related to student disapproval of plaintiffs' grooming.

ceive any unpaid compensation accruing since the beginning of the contract for the current school year. Plaintiffs have not shown any actual damages, and thus none will be allowed. The court, however, in its discretion, finds this is a just and equitable case for the assessment against the defendants of an award of reasonable attorney fees and court costs for this necessary action to vindicate the deprivation of constitutionally-protected civil rights. The court finds that $2,000 is reasonable compensation for plaintiffs' counsel and that amount will be fixed in the Judgment of the court.[6]

Let judgment be issued accordingly.

6. The court on November 21, 1972 reconsidered its ruling allowing attorney's fees and denied same by holding "(1) that plaintiffs by their conduct precipitated the litigation by refusing to attend the administrative hearing offered, and (2) defendant officials were not shown to have been guilty of obdurate obstinacy in denial of constitutionally protected rights." Lee v. Southern Home Sites Corporation, 429 F.2d 290 (5 Cir. 1969); see Johnson v. Combs, 471 F.2d 84 (5 Cir. 1972).