Gerald Brent **FAGAN**, Appellant,

v.

**NATIONAL CASH REGISTER
COMPANY**, Appellee.

No. 71–1243.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 20, 1972.

Decided June 29, 1973.

Rehearing Denied Aug 21, 1973.

Thomas O. Mann, Washington, D. C., with whom Ben Paul Noble, Washington, D. C., was on the brief, for appellant. Henry Schoenfeld, Washington, D. C., also entered an appearance for appellant.

Thomas C. Green, Washington, D. C., with whom David G. Bress, Washington, D. C., was on the brief, for appellee.

Charles L. Reischel, Atty., E. E. O. C., with whom Julia P. Cooper, Chief Appellate Section, E. E. O. C., Washington, D. C., was on the brief, for Equal Employment Opportunity and amicus curiae urging reversal. Robert Fitzpatrick, Washington, D.C., also entered an appearance for E. E. O. C., as amicus curiae.

Before DANAHER, Senior Circuit Judge, and WRIGHT, and WILKEY, Circuit Judges.

DANAHER, Senior Circuit Judge:

This appellant in the district court had alleged that he was the victim of unlawful sex discrimination within the purview of 42 U.S.C. § 2000e-2(a). After a hearing, the district court on March 30, 1971, dismissed[1] the complaint as failing to state a claim entitling the appellant to relief and, therefore, did not reach the appellant's motion for a temporary restraining order. We affirm.

The appellant had submitted on affidavit attached to his complaint: That I wear my hair long, that is below the ears and below the collar in the back and styled in the vogue and fashion of the times in projection of my image of self and consistent with my consciousness of my peer group.[2]

The appellant was quite aware that, many months before, his employer had issued grooming regulations which, as to employees in its Technical Service Department, applied to haircuts, sideburns, mustaches, beards, suits, shirts, ties and shoes. The section dealing with "Haircuts" provided:

> Hair will be neatly trimmed and combed. The length of the hair will taper down the back of the head and terminate above the collar. This eliminates any appearance of long hair.

The appellant's affidavit was countered, in support of the appellee's motion to dismiss, by the affidavit of one Richard Paugh, Manager of the Technical Services Branch of the National Cash Register Company which as we now paraphrase it

---

1. Bell v. Hood, 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946).

2. We have no doubt of this appellant's right to wear his hair at any length in projection of his image of himself and consistently with his "consciousness" of his "peer group." That same right undoubtedly would include his wearing jeans, sandals, strings of beads, a Fu-Manchu mustache, shirts bearing legends of his own selection and other habiliments tending to project an image of himself.

sets out that Fagan, trained at company expense, had been in the employ of the company since March 1967, had worked in Paugh's department since January, 1969, that Fagan's duties included "visiting the offices of customers of National Cash Register, particularly banks, for the purpose of service and repair of National Cash Register equipment, including bank proof machines, accounting machines, cash registers, adding machines and the like."

The employer in October, 1969, had received complaints from customers regarding the careless grooming of some company representatives, the Paugh affidavit continued. The employer's policy statement noted the company's receipt of comments from customers "regarding the extreme manner of dress and carelessness in grooming" which had been observed respecting some employees. "We must do everything we can to create a favorable impression on our customers and prospects. We simply cannot afford to have our employees do otherwise by their personal appearance." [3]

The employer's policy statement of 1969 was followed in April, 1970, by the adoption of the standards of grooming above noted. In December, 1970, the appellant was told by a superior that his hair style failed to conform to the company's requirement respecting its length. He was shown, and he also read, the outline of the company's position, and was then told to cut his hair or not to return to work the following Monday. He had his hair cut.

On March 22, 1971, the appellant was again told to conform to the company's position or not to return to

work the next day. Following a conference on March 24, 1971, when the company's memorandum of April, 1970, was again read to him, the appellant telephoned to his attorney from the meeting, and the instant case was filed on March 24, 1971. The following day, March 25, 1971, the appellant met in the Technical Service Department with various officials and was told that he was suspended.

There are some 100 technical service employees in the Washington metropolitan area of whom none are women although there are no restrictions on the employment of both sexes.

So read the Paugh affidavit in substance.

The appellant now argues that the aid of a federal court is his right; indeed he claims he should prevail as a matter of law, and he has moved that summary judgment be entered in his favor. Moreover, he has told us on brief that there is no issue of material fact. Thus, he submits, he is entitled to judgment as he relies upon 42 U.S.C. §§ 1981, 1983, 2000e-2(a) and on the First, Ninth and Fourteenth Amendments to the Constitution of the United States.[4]

## I

Fagan here has insisted upon his claim of right to wear his hair in a self-determined manner, indeed he contends that his employer's action constitutes an invasion of "liberties and privacy." To support his position he has cited to us various cases where some courts have stricken as invalid school board rules prescribing unacceptable hair length for students. Some of such cases have been based upon equal protection grounds, others have viewed "long hair" proscription as a denial of due process.

---

3. We may take judicial notice that reasonable regulations prescribing good grooming standards are not at all uncommon in the business world, indeed, taking account of basic differences in male and female physiques and common differences in customary dress of male and female employees, it is not usually thought that

there is unlawful discrimination "because of sex."

4. Appellant had here moved for summary reversal. We denied his motion on April 19, 1971. We granted status as Amicus to the Equal Employment Opportunity Commission (EEOC), and also afforded time for oral argument.

Yet others have purported to see a deprivation of rights within the ambit of 42 U.S.C. § 1983.[5]

On the other hand, in yet other cases, no constitutional deprivation has been perceived,[6] and no "rights" have been recognized as requiring or even as justifying the interposition of federal courts.

After the District Court in Karr v. Schmidt, 320 F.Supp. 728 (W.D.Tex. 1970), ruled that the local standard hair length regulation violated the due process and equal protection clauses, its judgment was stayed and Justice Black refused to vacate the stay. His memorandum, 401 U.S. 1201, 1202, 91 S.Ct. 592, 27 L.Ed.2d 797 (1971), reflected his view that the federal courts have no constitutional power to interfere with regulations promulgated by a public school system. The Fifth Circuit, *en banc*, 1972, 460 F.2d 609, not only reversed the District Court, but announced a *per se* rule directing the district courts thereafter to dismiss, forthwith, for failure to state a valid claim, a complaint which "merely alleges the constitutional invalidity of a high school hair and grooming regulation." [7]

A variant was next considered in Landsdale v. Tyler Jr. College, 470 F.2d 659, where the Fifth Circuit again sat *en banc*. The Court's opinion, October 4, 1972, noted that the college was a public institution of the State of Texas, to be sure, but distinguished the *Karr* holding since the State's right by regulation to intrude upon a personal liberty to wear long hair "stops at the college gate." The student is not required to go to college, but until that departure, the State was bound to educate him through high school. The numerous dissenting expressions reiterate previous views.

Chief Judge Brown, concurring in the majority *Landsdale* opinion, not only cited Judge Tuttle's memorandum in *Sherling, supra, note 7*, but emphasized Judge Wisdom's dissent in Karr, 460 F.2d at 619. There, after a bow in the direction of Mr. Justice Black's position, 401 U.S. 1201, 1202, 91 S.Ct. 592, 27 L.Ed.2d 797, *supra*, Judge Wisdom in note 1, expressed himself as "still unwilling to ascribe a similar view to the Supreme Court as a whole."

Whatever significance any of us ever may be wont to attach to the denial of certiorari, the Supreme Court "as a whole" denied certiorari as of November 6, 1972 in Karr v. Schmidt, 409 U.S. 989, 93 S.Ct. 307, 34 L.Ed.2d 256. By that time *Karr, Landsdale, Sherling, Freeman, Olff, Jackson* (see cases cited in note 6, *supra*) had been available to

5. See, *c. g.*, Massie v. Henry (4 Cir. 1971), 455 F.2d 779, and cases cited; Breen v. Kahl (7 Cir. 1969), 419 F.2d 1034, cert. denied 398 U.S. 937, 90 S.Ct. 1836, 26 L.Ed.2d 268 (1970), followed in Crews v. Cloncs (7 Cir. 1970), 432 F.2d 1259; Stull v. School Board of Western Beaver Jr.-Sr. High School (3 Cir. 1972), 459 F.2d 339, with its recognition of the conflicts in various courts.

6. See, *c. g.*, Freeman v. Flake (10 Cir. 1971), 448 F.2d 258, and cases cited at 260, cert. denied 405 U.S. 1032, 92 S.Ct. 1292, 31 L.Ed.2d 489 (1972), where Justice Douglas, dissenting, noted an equal division among the Circuits considering hair style regulations; Karr v. Schmidt (5 Cir. 1972), 460 F.2d 609, cert. denied 409 U.S. 989, 93 S.Ct. 307, 34 L.Ed.2d 256 (1972) ; Olff v. East Side Union High School District, cert. denied 404 U.S. 1042, 92 S.Ct. 703, 30 L.Ed.2d 736 (1972) where Justice Douglas dissented with an opinion relating back to King v. Saddleback Jr. College District (9 Cir. 1971), 445 F.2d 932 and cases at 936; Jackson v. Dorrier (6 Cir.), 424 F.2d 213, cert. denied 400 U.S. 850, 91 S.Ct. 55, 27 L.Ed.2d 88 (1970).

7. Deeming its decision compelled by Karr v. Schmidt, a division of the Fifth Circuit in Sherling v. Townley, 464 F.2d 587 (1972), applied the Karr holding, with Judge Tuttle challenging, as he regarded the Karr majority view completely erroneous on First and Fourteenth Amendment grounds.

 *And see* Conard v. Goolsby, 350 F.Supp. 713 (N.D.Miss.E.D.1972), where a high school grooming regulation limiting the length and style of an *adult teacher's* hair, mustache, goatee, or beard, was held irrelevant to any legitimate state interest, and hence not within the Karr v. Schmidt ruling.

the Court. Only Mr. Justice Douglas had voted to grant certiorari,[8] indeed it is clear from the cases cited in notes 5 and 6, *supra*, that a petitioner for cert. in these hair situations was to get no-where—whether he had prevailed in the lower courts or not.

We may fairly assume this much, it would appear, the Supreme Court sees no federal question in this area. We are persuaded that the only basis upon which Fagan might predicate a claim must stem from 42 U.S.C. § 2000e–2(a) (1) and (2) to which we now turn.

## II

■ Basically, throughout, the grava-men of Fagan's position has been that his employer unlawfully had discriminat-ed against him because of his sex. Ac-cordingly as a matter of convenience, we set out the pertinent portion of 42 U.S.C. § 2000e–2, Unlawful employment practices—Employer practices

(a) It shall be an unlawful employ-ment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or other-wise to discriminate against any in-dividual . . . because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classi-fy his employees in any way which would deprive or tend to deprive any individual of employment op-portunities . . . because of such individual's . . . sex . . . . .

In Griggs v. Duke Power Co., 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), the Court found itself confront-ed with a question of first impression. It then explained at 429–430, 91 S.Ct. at 853:

The objective of Congress in the en-actment of Title VII is plain *from the language of the statute.* It was to achieve equality of employment oppor-tunities and remove barriers that have operated in the past to favor an iden-tifiable group of white employees over other employees. (Emphasis added.)

The Court then at 431, 91 S.Ct. at 853 again emphasized:

Discriminatory preference for any group, minority or majority, is *pre-cisely and only what Congress has proscribed.*[9] (Emphasis added.)

True, the Court in *Griggs* was consid-ering the problem of discrimination [10] on

8. *And see* his dissenting opinion in Olff v. East Side Union High School District, 404 U.S. 1042, 92 S.Ct. 703, 30 L.Ed. 2d 736, and his memorandum, dissent-ing, as of March 27, 1972, in Freeman v. Flake, 405 U.S. 1032, 92 S.Ct. 1292, 31 L.Ed.2d 489.

In the latter case, *supra note* 6, Judge Breitenstein had covered much the same ground as appears in Karr v. Schmidt, re-ferring particularly, 448 F.2d at 261, to the proliferation of litigation which had resulted from an expanded use of 42 U.S.C. § 1983. Mr. Justice Brennan writ-ing for a unanimous Court in District of Columbia v. Carter, 409 U.S. 418, 423–424, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973), had pointed out that Section 1983 does not reach purely *private* conduct explaining further that the Fourteenth Amendment provides no shield against such conduct, however discriminatory or wrongful.

9. The statute obviously enough proscribes discrimination against any individual be-cause of "race, color, religion, sex or national origin."

10. *See* Griggs v. Duke Power Company (4 Cir. 1970), 420 F.2d 1225. Judge Sobeloff, dissenting in part from the majority holding, 420 F.2d at 1238 et seq., denounced the possibilities which he deemed had been left open by the posi-tion taken by the majority. There should be no denial of opportunity by artifice, he observed, for, to continue discrimina-tory practices, an employer need only choose any test that favors whites and is irrelevant to actual job qualifications. Tracing the legislative history in this area in 420 F.2d at 1241, 1242, 1243, Judge Sobeloff's excellent discussion erected the target which drew the fire of the Supreme Court which, in substantial measure, tracked Judge Sobeloff's posi-tion. *Cf.* McDonnell Douglas Corp. v. Green, 411 U.S. 792, at 799–801, 93 S.Ct. 1817, at 1823–1824, 36 L.Ed.2d 668 (1973).

the basis of a *racial* classification. However, what was there seen to be the Congressional purpose was merely an extension of what had been said succinctly in Phillips v. Martin Marietta Corporation, 400 U.S. 542, 91 S.Ct. 496, 27 L. Ed.2d 613 (1971), vacating Phillips v. Martin Marietta Corporation (5 Cir. 1969), 416 F.2d 1257. The Supreme Court after noting that persons of like qualifications must be given employment opportunities, irrespective of their *sex*, found error in the lower court's permitting one hiring policy for women and another for men, each having pre-school age children.[11]

Random sampling of the views of various courts of appeals and district courts yields the consistently stated principle, as in *Martin Marietta, supra*, that women are to be afforded job opportunities on an equal footing with men. For example, a weight-lifting qualification discriminated against women on the ground of sex where no such barrier was erected against male employees. Bowe v. Colgate-Palmolive Company (7 Cir. 1969), 416 F.2d 711. In Weeks v. Southern Bell Telephone & Telegraph Company (5 Cir. 1969), 408 F.2d 228, the plaintiff-appellant was denied a switchman's job because she was a woman. Schaeffer v. San Diego Yellow Cabs, Inc. (9 Cir. 1972), 462 F.2d 1002, found discrimination against women where men could work a nine-hour day but women were limited to an eight-hour stint. La Fleur v. Cleveland Board of Education (6 Cir. 1972), 465 F.2d 1184, saw invidious discrimination based on sex because of enforced maternity leave without pay. The Fifth Circuit in 1971 saw sex discrimination in Danner v. Phillips Petroleum Company, 447 F.2d 159, where women were excluded from achieving seniority rights which were awarded to males, and where, indeed, this otherwise qualified plaintiff-appellant was laid off and her job was given to a man. Even in advertising for help, exclusion of opportunity for one sex created unacceptable discrimination against the other, the court found in Hailes v. United Air Lines (5 Cir. 1972), 464 F.2d 1006. Sex differentials in opportunities for earning overtime pay engaged the court in Hays v. Potlatch Forests, Inc. (8 Cir. 1972), 465 F.2d 1081, where women, but not men, working overtime were to receive time and a half, thus discriminating against male employees. Sprogis v. United Air Lines, Inc. (7 Cir. 1961), 444 F.2d 1194, considered the employer's no-marriage policy as applied to stewardesses where no such rule obtained against males. The majority found discrimination on the ground of sex over the critical dissent of Judge Stevens, 444 F.2d at 1202–1206, cert. denied, 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed. 2d 543 (1971). Diaz v. Pan American World Airways, Inc. (5 Cir. 1971), 442 F.2d 385, involved sex discrimination against a man who sought the position of flight cabin attendant where company hiring terms had restricted such opportunities to females.[12]

It would seem inescapable that Congress was saying that job opportunities must be opened, remain open, and not be denied or terminated because of race, color, religion, sex or national origin. The language is plain, and as here considered means that men and women so far as jobs are concerned must receive equal treatment and not be the objects

---

11. The employer had notified Mrs. Phillips that it would accept no job applications from women with pre-school age children while there was no such policy with respect to men. The Court did not rule out the adoption of such a policy if demonstrably the fact of a conflicting family obligation became more relevant to job performance for a woman than for a man.

12. The court found insufficient basis for concluding that a bona fide occupational qualification had been established as reasonably necessary for the operation of the company's enterprise. *See* 42 U.S.C. § 2000e–2(e), Phillips v. Martin Marietta Corporation, *supra*, Cheatwood v. South Central Bell Telephone & Tel. Co., 303 F.Supp. 754 (Ala.N.D.1969), and Rosenfeld v. Southern Pacific Company (9 Cir. 1971), 444 F.2d 1219, 1223–1225.

of discrimination on the ground of sex. Thus speaks the Act and so spoke Judge Hamley in Rosenfeld v. Southern Pacific Company, note 12, *supra*, at 1223:

> Southern Pacific's employment policy under which, for example, it has denied Mrs. Rosenfeld an employment assignment on the ground that women, considered generically, are not physically or biologically suited for such work, results in distinguishing employees, thus discriminating against some because of sex, within the meaning of subsection (1) of this provision. It also constitutes a limitation upon, segregation of, or classification of the company's employees in a way which would deprive or tend to deprive an individual of employment opportunities because of such individual's sex, within the meaning of subsection (2) of the quoted section.[13]

The cases we have cited here in Part II clearly demonstrate how the courts have appraised the Congressional purpose to establish that persons of like qualifications are to be given employment opportunities irrespective of their sex. Certainly on our record there is no evidence of discrimination against women.

### III

At this point we may note that in support of appellant's claim of aggrievement, his affidavit as submitted to EEOC, continued:

> . . . That the company has a policy against males wearing hair long and styled in the manner mine is and

has no such policy with reference to the manner and mode that women employees must wear their hair . . . and I am informed most recently that unless I have my hair cut to conform to store policy before Thursday, March 25th, 1971, I will be discharged from my employment for failure to comply with company policy.

Appellant thus would predicate his claim of discrimination because of sex for he then refused to cut his hair and his employment was terminated.[14]

Unlike discriminatory situations which arose in cases cited in Part II, *supra*, no woman here complained of the company's policy. There is no suggestion that any woman had ever sought or had been denied employment in the Technical Service Department. There were no company restrictions on the employment of both sexes.[15] Clearly Fagan had not been denied employment because he was a male, indeed he had been an employee of the company since 1969, and prior to the March episode, he had brought himself into compliance with company policy. The Paugh affidavit further reveals that in the Washington Metropolitan area there are about one hundred technical service employees like Fagan whose duties included visiting the offices of the company's customers, particularly banks, for the purpose of service and repair of company equipment, adding machines, cash registers and the like.

If while engaged in company service Fagan had been required to wear a company prescribed uniform,[16] there could

13. *See* 42 U.S.C. § 2000e–2(a), *supra*, page 1119.

14. *Cf.* Dewey v. Reynolds Metals Company (6 Cir. 1970), 429 F.2d 324, 329, rehearing denied, *id.* 334, aff'd by an equally divided Court, 402 U.S. 689, 91 S.Ct. 2186, 29 L.Ed.2d 267 (1971).

15. *See* Manager Paugh's affidavit, pages 3 and 4, *supra*.

16. Such a requirement can hardly be said to impose a "special disability" imposed upon one sex *because* of *sex*, to paraphrase Frontiero v. Richardson, 411 U.S.

677, at 686, 93 S.Ct. 1764, at 1770, 36 L.Ed.2d 583 (May 14, 1973). *Cf.* Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed. 2d 225 (1971). Even were we to see here a sex-based classification, it readily would withstand the "strict judicial scrutiny" enjoined by Frontiero v. Richardson, *supra*, at 688, 93 S.Ct. 1764 at 1771. It is common practice in many lines of endeavor that employees must wear uniforms, *e. g.*, when performing guard service, or entering premises to read utility meters.

be no valid claim of discrimination on the ground of sex.

We have then a situation where a male was indeed employed, and with full knowledge of the company's policy, insisted upon performing his work on his own terms and upon requiring the company to accommodate to his projection of his own image.[17] He claimed the "right" to wear his hair "styled in my personal projection or image in the development of my personality." He admitted on affidavit that "If I would get my hair cut I could come back . . . to work the next morning." In last analysis, we read his claim not as a challenge to the right of the employer to require Fagan to wear his hair in a shorter style but as urging that in order for the company legally to do so, it must require women to conform to the grooming style applicable to males, even though there are no women employees here involved.

We are quite aware that completely sincere and earnest jurists may differ from others of equal competence in their appraisal of legal issues and the conclusions deemed essential to their resolution.[18] Hair-length cases in the private sector are no less a problem than the "State" cases treated in Part I, supra. Courts in the very area under consideration have varied in their approach.

For example, Rafford v. Randle Eastern Ambulance Service, Inc., 348 F. Supp. 316 (D.Fla., Miami Div., 1972), taught us that there was no discrimination based on sex where men refused to shave their beards. The employer had prescribed no policy concerning the length of hair for either men or women, and the plaintiffs had never been disciplined or discriminated against because of their hair length or because of sex. The employer, it was decided, may not apply a standard to one sex which varies from that applicable to the other. The district judge noted that beards are a special male characteristic.[19]

The court saw the problem in terms of Section 2000e–2(e) in Donohue v. Shoe Corporation of America, 337 F.Supp. 1357, 1359 (Cal.C.D.1972). The employer there had not pleaded or established the defense of a *"bona fide* occupational qualification" where the plaintiff, a shoe salesman in contact with the public, was discharged for wearing long hair although women were allowed to do so. Since there was a hiring or retention standard applicable to one sex and not to the other, the employer's motion to dismiss was denied.

---

17. *See* note 2, *supra,* and related text; *cf.* Dewey v. Reynolds Metals Company, note 14, *supra,* 429 F.2d at 334. We here see nothing in the legislative history of the Act or in the Act itself which requires a federal court to rule that an employee's hair style which conflicts with an employer's grooming regulation constitutes *per se* discrimination because of sex. On any such basis he certainly had no constitutional right to a job. *Cf.* discussion by Judge (now Mr. Justice) Blackmun in Byrd v. Sexton (8 Cir. 1960), 277 F.2d 418, 432, citing Ferrer v. Fronton Exhibition Co. (5 Cir. 1951), 188 F.2d 954, and Love v. Chandler (8 Cir. 1942), 124 F.2d 785.

18. No better illustration is needed than we find in the division among the judges in Karr v. Schmidt, *supra,* 460 F.2d 609, and among those same judges in Landsdale v. Tyler Jr. College, *supra,* 470 F. 2d 659—not to mention varying postions

taken from time to time in the Supreme Court.

19. The court recognized that some men grow beards and some women become pregnant!

In Schattman v. Texas Employment Commission (5 Cir. 1972), 459 F.2d 32, cert. denied, 409 U.S. 1107, 93 S.Ct. 901, 34 L.Ed.2d 688 (1973), the Commission had promulgated a policy terminating the employment of pregnant females some two months prior to the date of delivery. The plaintiff had not been denied "equal protection," for her employment had not been terminated either because she was a woman or because she had become pregnant, said the court, but only because her pregnancy was so far advanced. The Commission's regulation was found to be reasonable and rationally related to a permissible state purpose. Rehearing *en banc* was denied, Judge Wisdom dissenting.

Earlier we could have seen Roberts v. General Mills, Inc., 337 F.Supp. 1055 (N.D.Ohio W.D.1971), where the operator of a food-processing plant had classified its employees, requiring that men wear hats while women were permitted to wear hairnets. Thus the Act was said to have been violated since the company would not allow Roberts to grow his hair as long as that worn by women in the same department. Roberts wanted to wear a hairnet.

Aros v. McDonnell Douglas Corporation, 348 F.Supp. 661 (C.D.Cal.1972), found that three employees had been terminated because their jobs were phased out. Their casual dress, their ill-groomed hair, failure to report on time and other grounds for possible employer dissatisfaction did not deter discussion to the effect that where an employee-grooming code for males differed from that prescribed for females, a discrimination based on sex could be seen. Realizing that an employer has "every right" to adopt dress codes suitable to various job categories, the opinion read that a particular code must apply equally to everyone.

*On the other hand*, we see a differing point of view in Baker v. California Land Title Company, 349 F.Supp. 235, 237–238 (C.D.Cal.1972). Making some sense as to claimed discrimination "because of sex" the court referred to the meager legislative history of the "sex" amendment. Then the opinion explained the real purpose of the language. Congress sought to establish equal occupational opportunities, an equal right to available employment, equal pay for equal work and equal working conditions. It was not planned that the Act was "[to] be used to interfere in the promulgation and enforcement of the general rules of employment, deemed essential by an employer, where the direct or indirect economic effect upon the employee was nominal or non-existent." Specifically rejecting Donohue v. Shoe Corporation of America, *supra,* the judge said the Act was never intended to permit an employee to set in motion

either federal or state employment machinery "merely because he wishes to wear his hair longer than the company rules prescribe."

A bit closer to home, we now turn to Boyce v. Safeway Stores, Inc., 351 F. Supp. 402 (D.D.C.1972). There finding that "no substantive issue is presented," Judge Gesell granted summary judgment for the defendant. There were grooming standards for female employees as well as for males. It was not unreasonable for an employer to expect differences in grooming between men and women, it was observed. The judge found no sex-based discrimination where a male food clerk was discharged because his head and facial hair failed to conform to the employer's grooming standards applicable to male employees having regular contact with the public. Obviously aware of the incongruity of the argument advanced before him, the judge took account of Diaz v. Pan American Airways, Inc., Phillips v. Martin Marietta Corporation and Griggs v. Duke Power Co. (all treated in our Part II, supra). He commented, correctly we think, that the courts in those cases struck down "outmoded and unjustifiable sex stereotypes . . . [which] had distinct employment opportunity disadvantages for one sex." He noted that *Safeway* had

sought to establish a clear and concise written rule for the grooming of its public-contact employees, male and female, so that those employees will be protected from arbitrary and unreviewable decisions by individual store managers.

\* \* \* \* \* \*

We quote further:

Congress by this Act did not give the federal courts the task of deciding whether hair at the collar level or one-half inch below is a bona fide occupational qualification. Such a suggestion is absurd; such a task borders on the non-justiciable. Safeway's grooming code is not arbitrary, and for its public-contact employees,

serving as its only sales force, such a reasonable code is a bona fide occupational qualification.

Judge Gesell found no unlawful discrimination because of sex.[20]

Substantially similar treatment to the problem was accorded by Judge Bootle in Willingham v. Macon Telegraph Publishing Company, 352 F.Supp. 1018 (Georgia M.D.1972) (appeal pending). There, it was observed:

What the defendant does require is that plaintiff conform to standards of appearance which the defendant feels are necessary to the conduct of his business. It is not unreasonable for an employer to expect differences in grooming between men and women— and such expectations are not indicative of sexual treatment.

Judge Bootle saw the plaintiff's argument as calling for an expansion of the Act far beyond what must have been the purpose of its enactment. Tracing out what might be the end result of plaintiff's argument, the Judge commented that

it must logically follow that men, if they choose, could not be prevented by the employer from wearing dresses to work if the employer permitted women to wear dresses . . . [which] would discriminate against the rights of men, and such discrimination would be present in the same manner as it would be present when men are prohibited by employers from wearing long hair.

We may well subscribe to Judge Bootle's view that

employers, like employees, have rights. This court, without a far more certain mandate from Congress than that contained in Title VII, will not be party to what it considers a ridiculous, unwarranted encroachment on a fundamental right of employers, i. e., the right to prescribe reasonable grooming standards which take cognizance of societal mores.

Sustaining the employer's motion for summary judgment dismissing the action, the Judge concluded:

Clearly [he] has the right to wear his hair as he pleases, but correspondingly, the defendant has the right to expect its employees to groom and conduct themselves in such a way as to promote the best interest of its business.[21]

We find ourselves persuaded by the reasoning and the treatment to be seen in Baker v. California Land Title Company, *supra*, Boyce v. Safeway Stores, Inc., *supra*, and Willingham v. Macon Telegraph Publishing Company, *supra*, and comment further in light of the record in this case where the appellant has insisted he is entitled to judgment as a matter of law.

Perhaps no facet of business life is more important than a company's place

---

20. *See also* No. 71–1415, Dodge v. Giant Food, Inc. (D.D.C.1972), where, without opinion, Judge Green's findings support her conclusion that there had been no discrimination on the basis of sex where there were reasonable grooming regulations applicable alike to male and female employees.

21. Undoubtedly some employers may share the observations of Mr. Justice Douglas (concurring and dissenting) in Ham v. South Carolina, 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973), where we read:

The prejudices invoked by the mere sight of "non-conventional" hair growth are deeply felt. Hair growth is symbolic to many of rebellion against traditional society and disapproval of the way the current power structure handles social problems. Taken as an affirmative declaration of an individual's commitment to a change in social values, "non-conventional" hair growth may become a very real personal threat to those who support the *status quo*. For those people, "non-conventional" hair growth symbolizes an undesirable life-style characterized by unreliability, dishonesty, lack of moral values, communial ("communist") tendencies, and the assumption of drug use. (409 U.S. at 529, 530, 93 S.Ct. at 852).

in public estimation. That the image created by its employees dealing with the public when on company assignment affects its relations is so well known that we may take judicial notice of an employer's proper desire to achieve favorable acceptance. Good grooming regulations reflect a company's policy in our highly competitive business environment. Reasonable requirements in furtherance of that policy are an aspect of managerial responsibility. Congress has said that no exercise of that responsibility may result in discriminatory deprivation of equal opportunity because of *immutable* race, national origin, color, or sex classification.[22]

So to say is a far cry from a conclusion that the length of one's hair is either constitutionally or statutorily protected. More remotely is it to be discerned as discrimination because of sex, when employees' hair length fails to conform to an employer's reasonable requirements, designed to further the company's legitimate interests. Clearly there are "societal as well as personal interests" so involved in providing equal opportunities for citizens, that an employer is not to be permitted under the Act to discriminate because of grounds "resulting from forces beyond [the employees'] control." Discrimination on *such* grounds is not to be "allowed to work a cumulative and invidious burden upon such citizens for the remainder of their lives."[23]

But equally it seems obvious to us, that one seeking an employment opportunity as in *our* situation where hair length readily can be changed, may be required to conform to reasonable grooming standards designed to further the employing company's interest by which that very opportunity is provided. There is no suggestion that the company regulation is pretextual or that it has been derived otherwise than in complete good faith.

22. Likewise no discrimination can be based upon constitutionally protected rights such as religion.

23. Such matter as we have quoted in this paragraph reflects the principles com-

## IV

The appellant has cited to us the Commission's decision in EEOC case No. 1/AU9–545 where the Commission concluded that the employer had acted in violation of Title VII of the Act by refusing to hire, because of his sex, a male production worker with shoulder-length hair, and otherwise by refusing to hire females as production workers because of their sex, and by maintaining a height requirement which discriminates against females as a class because of their sex and Spanish surnamed American males as a class because of their national origin. It has been argued that the agency decision is entitled to "great deference" citing us to Griggs v. Duke Power Co., *supra*, 401 U.S. where at 433–434, 91 S.Ct. 849 the Court was discussing the Commission's interpretation of Section 703(h) of the Act. The Court had already perceived the Congressional purpose to eliminate discrimination because of race noting that what Congress sought was "plain from the language of the statute." *Id*. at 429, 91 S.Ct. at 853. Then the Court at 434, 91 S.Ct. at 855 explained its having accorded deference to the Commission's interpretation thus:

Since the Act and its legislative history support the Commission's construction, this affords good reason to treat the guidelines as expressing the will of Congress.

Here, neither the Act nor its legislative history even remotely predicated an instance of discrimination "because of sex" on the length of an employee's hair worn in contravention of the employer's good grooming regulations. Courts

"are not obliged to stand aside and rubber-stamp their affirmance of administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute." NLRB

prising the philosophy of the Court in McDonnell Douglas v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 688 (1973).

v. Brown, 380 U.S. 278, 291, 85 S.Ct. 980, 988, 13 L.Ed.2d 839.[24]

We find ourselves quite unwilling, respecting the male's long hair aspect, to accept as discrimination because of sex the Commission's decision, above cited, as based upon its own expanded reading of the statute and not comporting with the repeatedly declared objectives which Congress sought to achieve.

Our respected colleague points to Section 703(a) of the Act as interpreted by Mr. Justice Marshall in Phillips v. Martin Marietta Corp., 400 U.S. 542, 544 et seq., 91 S.Ct. 496, 27 L.Ed.2d 613 (1971). Mr. Justice Marshall would adopt the guidelines and regulations as promulgated by EEOC. He alone rejected the majority ruling. He thought his colleagues had fallen into a trap. He thought an employer can require his employees, both men and women, to meet minimum performance standards and can even require parents to provide for the care of their children "so that job performance is not interfered with."

What the majority held was that persons of like qualifications are to be given employment opportunities irrespective of their sex. The majority said that the condition of the hiring policy there under consideration might be met under the circumstances outlined in 42 U.S.C. § 2000e–2(e). Thus evidence could be received to show that a bona fide occupational qualification is *"reasonably necessary to the normal operation of that particular business or enterprise."* (Emphasis added).

So it was that the majority remanded since the record was not adequate "for

resolution of these important issues." *Id.* at 544, 91 S.Ct. at 498.

Here we face no such problem. Fagan has insisted that there are no issues of material fact. The Paugh affidavit was before the district judge as was Fagan's affidavit in support of his position. The district judge was satisfied that on this record the employer had established the basis for its reasonable requirement that its grooming standards be complied with. It was thereupon concluded that Fagan had failed to state a claim upon which relief can be granted and the complaint was dismissed accordingly. We think he reached a right result but the judgment will be modified that the basis may correctly appear.[25]

Affirmed.

WRIGHT, Circuit Judge (dissenting):

The Supreme Court has made clear that Section 703(a)[1] of the Civil Rights Act of 1964 prohibits "one hiring policy for women and another for men." Phillips v. Martin Marietta Corp., 400 U.S. 542, 544, 91 S.Ct. 496, 27 L.Ed.2d 613 (1971). By passing Section 703(a) "Congress intended to prevent employers from refusing 'to hire an individual based on stereotyped characterizations of the sexes.'" *Id.* at 545, 91 S.Ct. at 498. (Mr. Justice Marshall concurring). Thus the question presented by this case is simply whether appellee's "no long hair for male employees only" policy "is a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise." 42 U.S.C. § 2000e–2(e) (1970).

---

24. Volkswagenwerk v. FMC, 390 U.S. 261, 272, 88 S.Ct. 929, 935, 19 L.Ed.2d 1090 (1968); FMC v. Seatrain Lines, Inc., 411 U.S. 726, 93 S.Ct. 1773, 36 L.Ed. 2d 620 (1973). In United States v. Cartwright, 411 U.S. 546, 93 S.Ct. 1713, 36 L.Ed.2d 528 (1973), the Court struck down as "unrealistic and unreasonable" a regulation promulgated by the Secretary of the Treasury even though Congress specifically had delegated to him the task of administering the tax laws of the nation.

25. Since matters outside the pleadings were presented and considered, we think the appellee's motion to dismiss should be treated as one for summary judgment and disposed of as provided in Rule 56. *See* Irons v. Schuyler, 151 U.S.App.D.C. 23, 28, 465 F.2d 608, 613, cert. denied 409 U.S. 1076, 93 S.Ct. 682, 34 L.Ed.2d 664 (1972); *cf.* Carter v. Stanton, 405 U.S. 669, 671, 92 S.Ct. 1232, 31 L.Ed. 2d 569 (1972).

1. 42 U.S.C. § 2000e–2(a) (1970).

This exception to the prohibition in Section 703(a) against sex discrimination in employment is "applicable only to job situations that require specific physical characteristics necessarily possessed by only one sex." *Phillips, supra,* at 545–546, 91 S.Ct. at 498 (Marshall, J., concurring). And the burden of proof is on the employer. *Id.* at 544, 91 S.Ct. 496.

Here the District Court granted appellee's motion to dismiss without even hearing evidence as to whether its admittedly discriminatory long hair policy was a "bona fide occupational qualification" under the Act. Under the circumstances, as in *Phillips,* I would reverse and remand to the District Court to give appellee the opportunity to prove, if it can, that its policy comes within the exception provided in Section 703(e) of the Act.[2] *See* Willingham v. Macon Telegraph Publishing Co., 5 Cir., 482 F.2d 535 (decided June 28, 1973); Donohue v. Shoe Corp. of America, C.D.Cal., 337 F.Supp. 1357 (1972).

I respectfully dissent.