Thomas O. **MORRIS**

v.

The **TEXAS AND PACIFIC RAIL-WAY COMPANY.**

Civ. A. No. 72–309.

United States District Court,
M. D. Louisiana.

Jan. 24, 1975.

Kenneth W. Kennon, Kennon, Callihan, Wilson & Duchein, Baton Rouge, La., for plaintiff.

James P. Simpson, Dallas, Tex., H. Payne Breazeale, John B. Noland, Breazeale, Sachse & Wilson, Baton Rouge, La., for defendant.

E. GORDON WEST, District Judge:

Plaintiff, Thomas O. Morris, was employed as a brakeman for The Texas and Pacific Railway Company. He chose to let his hair grow long and wear it tied in what is referred to as a "pony-tail," which hung down to or beyond his shoulder line. His employer, The Texas and Pacific Railway Company, did not approve of this and advised him on two or three occasions that he must either cut his hair to an acceptable length or he would be discharged from his employment. He was advised by his supervisor, who was acting within the authority granted him by the defendant Company, that in order to be acceptable his hair should be cut so as not to extend below the line of his shirt or coat collar, and so as not to extend below his ears. There were apparently no specific written regulations to this effect, the Company's grooming regulations being only general in character. But there is no question but that the supervisor was acting within his authority when he gave these instructions to the plaintiff. The plaintiff chose not to comply with this order and was therefore discharged from his employment. He brings this suit based entirely on the contention that his discharge constituted discrimination solely on the basis of sex in violation of Title VII of the Civil Rights Act of 1964, Title 42, U.S.C., Section 2000e et seq. At the time of the trial of this case, the defendant moved for an involuntary dismissal at the close of the plaintiff's case which was granted for the following reasons.

It was admitted by the plaintiff that his suit was based solely on alleged sex discrimination in his employment. It was admitted by the plaintiff that there were no women employed by the defendant as brakemen, and that the discharge of the plaintiff in no way involved a question of whether a male or female should be employed to do the job being done at the time by the plaintiff. His sole contention seems to be that it is sexual discrimination to say that men employed by The Texas and Pacific Railway Company must comply with grooming regulations without at the same time saying that women employed by that Company must comply with the same regulations. In other words, the plaintiff would have us hold that if women can wear long hair while employed by the defendant Railway Company, men should be able to do so too. And then, the logical extension of this contention must be that if women can come to work in a dress, or in a skirt and blouse, men should be able to do so too. But since the question of whether a male or a female was to have or was to be considered for the job sought to be held by the plaintiff was in no way involved, the Court concludes that sexual discrimination was in no way involved in this case.

In Fagan v. National Cash Register Company, 157 U.S.App.D.C. 15, 481 F.2d 1115 (1973), the Court held that "the length of one's hair is [n]either constitutionally [n]or statutorily protected", and that enforcing grooming regulations not equally applicable to both sexes is not sex discrimination within the meaning or intent of Title VII of the Civil Rights Act of 1964.

The trial court in Baker v. California Land Title Company, 349 F.Supp. 235 (D.C.Cal.1972) put it very succinctly when it said:

"The question, then, before us is simply: Can a private employer require male employees to adhere to different modes of dress and grooming than are required of females without engaging in an unfair employment practice within the meaning of section 2000e–

2(a)(1)? I hold that an employer may do so." At p. 237.

In affirming this holding the Ninth Circuit Court of Appeals said:

"We are not persuaded that tolerance of a certain hair length for female employees but not for males, 'discriminates' on the basis of sex within the meaning of Title VII of the Civil Rights Act of 1964. It seems clear from a reading of the Act that Congress was not prompted to add 'sex' to Title VII on account of regulations by employers of dress or cosmetic or grooming practices which an employer might think his particular business required. The need which prompted this legislation was one to permit each individual to become employed and to continue in employment according to his or her job capabilities. Or, to express it another way, 'The paradigm case of explicit sex discrimination is where sex itself, as a broad generic classification, is the sole basis of the action taken by the employer. Such a case occurs when an employer simply refuses to hire women for a certain position.'" 507 F.2d 895, at 896, 897.

The plaintiff urges, however, that even if the employer has the right to regulate grooming of its employees, the regulation must bear a reasonable relationship to some bona fide occupational qualifications. In support of this contention, the plaintiff points to the *Fagan* case, supra, wherein the Court did discuss the company regulations in relation to employer needs. But as pointed out in *Baker*, any uncertainty that might have existed as a result of *Fagan* concerning the need to show "bona fide occupational qualifications" in cases involving hair length, was clarified and made moot by the same *Fagan* Court in Dodge v. Giant Food, Inc., 160 U.S.App.D.C. 9, 488 F.2d 1333 (1973) when it said:

"Application of this statute requires a two-step analysis. It must first be determined that a discrimination on the basis of sex has occurred. If there is no sex discrimination, the inquiry ends. However, if the court

concludes that an employer has discriminated on the basis of sex then it is the employer's burden to establish that a 'bona fide occupational qualification' (BFOQ) reasonably necessary to the operation of the employer's business justifies the discriminatory practice. We conclude that Giant's hair-length regulations do not discriminate or classify within the meaning of the statute, and thus do not reach the issue whether hair length is a bona fide occupational qualification in this case." At p. 1335.

To the same effect is Bujel v. Borman's Inc., 384 F.Supp. 141 (D.C.E.D.Mich. 1974). Citing *Dodge*, the Court said:

"The proper approach to determine the issue under this statute is to ascertain if use of the defendant's grooming code adversely affects, as described in the statute, the employment of men or women. Only if the grooming code is used as a device to prevent or hinder employment, or the enjoyment thereof of one sex group over the other as set forth in the statute, should such a code be held to discriminate *on the basis of sex* as proscribed by Section 703 of Title VII of the Civil Rights Act of 1964, as amended, (42 U.S.C. § 2000e-2). It is not necessary to determine if the provisions of the grooming code are 'a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise' (§ 703 [e], Title VII, Civil Rights Act of 1964, as amended, [42 U.S.C. § 2000e-2]) unless and until discrimination *on the basis of sex* has been found as stated above." 384 F. Supp. at p. 144.

We are not unaware of the Fifth Circuit Court of Appeals holding in Willingham v. Macon Telegraph Publishing Company, 482 F.2d 535 (CA 5-1973) wherein it was concluded that a "hair-length" regulation for men was a violation of Title VII of the Civil Rights Act of 1964. But apparently, as a result of a strong dissent in that case, and in view of the contrary results reached by Courts in other Circuits, an en-banc re-

hearing was granted, and as of now, as far as this Court can determine, the decision of the en-banc Court has not been rendered.

Counsel for plaintiff argues that since the *Willingham* case has not been overruled or reversed, it is the "law of the Fifth Circuit" and that this Court is bound thereby. We do not subscribe to that theory.

While Congress apparently has the right, as they did, for example, in an indirect way in the Voting Rights Act of 1965, 42 U.S.C. § 1971 et seq., to sectionalize Federal law, the Courts have no such right when dealing with Federal law of general application. Regardless of what the Courts may have done, Congress has given no indication that it ever intended the Civil Rights Act of 1964 to be anything other than a Federal law of general application throughout the country. The right guaranteed by the Civil Rights Act of 1964 to equal employment opportunity regardless of race, color, religion, sex, or national origin was not intended by Congress to have one application in one Circuit and a different application in another. It is a right universally guaranteed to all persons in this country regardless of where they may reside. This law cannot be sectionalized by the Courts. An employment practice simply cannot be lawful under the Civil Rights Act of 1964 in one State, and at the same time and under the same circumstances be unlawful under the same Act in another State. As is often the case, however, the Appellate Courts in the various Circuits may differ both in their interpretation and in their application of the same law. Unfortunately, when this occurs, no one can be quite sure what the law really means until the differences between the Circuits have been resolved by the United States Supreme Court. When that resolution is finally made, there is no question but that all Courts, both at the district level and at the appellate level, are bound thereby. But until the ultimate resolution of the conflicting appellate decisions is made by the Supreme Court, it is the duty of the District

Court to interpret and apply the law as it understands it to be after due consideration of all of the appellate decisions, from whatever Circuit they may have emanated. Prior to a final ruling by the Supreme Court, where there is conflict among the Circuits, the interpretation placed upon a Federal law of general application by one Circuit Court of Appeals is no more authoritative than that placed upon it by the Appellate Court of another Circuit. When a District Court is faced with conflicting opinions emanating from different Circuits, it is in a position not too unlike the situation it finds itself in when hearing a diversity case in which the State law involved has been interpreted differently by lower State Courts but never authoritatively interpreted by the highest Court of the State. In such a situation it is incumbent upon the Federal Court to apply the State law as it believes it would be applied by the highest Court of the State were it confronted with the same question. Similarly, where there are conflicting, but equally authoritative decisions emanating from different Federal Circuit Courts, it is incumbent upon the District Court to apply the law as it believes the United States Supreme Court would apply it were it presented with the same question for determination.

■■ After careful consideration of Title VII of the Civil Rights Act of 1964, and of the various appellate decisions touching on the question of whether or not hair length regulations for males alone constitute sex discrimination in employment, this Court believes that the United States Supreme Court would be more apt to adopt the view expressed by the District of Columbia Circuit in Fagan v. National Cash Register Co., supra, and Dodge v. Giant Food, Inc., supra, and by the Ninth Circuit in Baker v. California Land Title Co., supra, and

by the District Court in the Eastern District of Michigan in Bujel v. Borman's, Inc., supra, than the interpretation placed on the statute by the Fifth Circuit Court of Appeals in the *Willingham* case. Thus, we now conclude that (1) regulations of an employer pertaining to the length at which the hair of a male employee must be worn do not constitute discrimination on the basis of sex as contemplated by Title VII of the Civil Rights Act of 1964 even though the employer does not have similar regulations pertaining to its female employees, and (2) since it is concluded that there has been no discrimination based on sex in this case, the Court need not reach the question of whether or not a specific hair length for male employees is a bona fide occupational qualification in this instance.

■ The fact that the plaintiff does not state a claim upon which relief can be granted under the Civil Rights Act of 1964 does not necessarily leave him without a remedy if he has, in fact, been unjustly terminated by his employer. If the plaintiff, a brakeman, has a dispute with the railroad concerning his employment or termination, he may present his claim to the National Railroad Adjustment Board in accordance with the provisions of Title 45, United States Code, Section 153 et seq. Except for claims falling within the purview of the Civil Rights Act, that Board has exclusive jurisdiction over disputes between railroad employees and the railroad companies by whom they are employed. The plaintiff has the right to contest his discharge before that Board if he sees fit to do so. The fact remains that he has not presented a case to this Court which is cognizable under the Civil Rights Act of 1964.

For these reasons, judgment will be entered herein in favor of the defendant, dismissing this case at plaintiff's cost.