**Raymond BUJEL, Plaintiff,**

v.

**BORMAN FOOD STORES, INC., a Delaware corporation, Defendant.**

**Civ. A. No. 4–72293.**

United States District Court,
E. D. Michigan, S. D.

Nov. 7, 1974.

**142**

Dale S. Adams, of Green, Green, Adams & Siefer, Detroit, Mich., for plaintiff.

Laurence A. Berg, of Friedman, Meyers & Keys, Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

Plaintiff, a male person formerly employed as a "clerk-cashier" for defendant Borman Food Stores, Inc., was allegedly discharged by the defendant on or about January 18, 1972 for refusing to comply with defendant's grooming code regarding hair length for male employees. He has filed an action contending that defendant's conduct violates Section 703 of Title VII of the Civil Rights Act of 1964, as amended, (42 U.S.C. § 2000e–2), and seeks reinstatement, back pay and damages.

Defendant has filed a motion for summary judgment contending that its maintenance of separate grooming codes for male and female employees does not, as a matter of law, constitute discrimination in violation of Title VII.

The record before the court on this matter consists of the pleadings and affidavits filed by the parties. This record establishes the following facts.

Plaintiff was employed by the defendant from December, 1967, to on or about January 18, 1972. The male employee hair-length portion of defendant's grooming code was in effect during the plaintiff's entire period of employment. On January 9, 14 and 17, 1972, plaintiff was told to have his hair cut to conform with the defendant's grooming code,[1] which provided for men to:

"4. Maintain a well-groomed appearance. Hair should be neatly trimmed

---

1. The defendant's grooming code provided in part:

**MALE EMPLOYEES**

1. Wear white shirts and black or red bow ties, and badge. When aprons are worn, they must be clean.
2. Wear clean, pressed trousers. Blue jeans, black jeans, or levis should not be worn.
3. Wear appropriate shoes of leather construction and polished. High-heeled, pointed toe or gym shoes are not considered appropriate.
4. Maintain a well-groomed appearance. Hair should be neatly trimmed with side-burns extending no lower than the bottom of the ear-lobe and hair must not protrude into the face. Neatly trimmed mustaches are permissible; however, beards and goatees are not.

**FEMALE EMPLOYEES**

1. Wear clean, knee-length uniforms, and badge.
2. Wear nylons and comfortable and appropriate shoes (no gym shoes).
3. Hair nets are required for all female employees.
4. Avoid excessive make-up and conspicuous hair styles.
5. Wear inconspicuous jewelry—if any.

with sideburns extending no lower than the bottom of the ear-lobe and hair must not protrude into the face. Neatly trimmed mustaches are permissible; however, beards and goatees are not."

There is nothing in the record to indicate that plaintiff did not comply with defendant's grooming code prior to January 9, 1972. On January 18, 1972 the plaintiff's employment with defendant terminated.

The plaintiff then filed a complaint with the Equal Employment Opportunity Commission. Pursuant to Section 706 (c) of Title VII, (42 U.S.C. § 2000e–5[c]), his complaint was deferred to the Michigan Civil Rights Commission. The Michigan Civil Rights Commission, however, waived jurisdiction in the matter and returned the complaint to the Equal Employment Opportunity Commission on April 24, 1974. The Equal Employment Opportunity Commission then investigated the plaintiff's complaint, attempted conciliation of the matter, and finally issued a right to sue letter on or about June 27, 1974. The plaintiff filed his action with this court on or about August 20, 1974.

The issue presented in this case is whether the male hair-length portion of the defendant's grooming code discriminates against male employees on the basis of sex, in violation of Title VII of the Civil Rights Act of 1964, as amended. With one arguable exception,[2] this is a case of first impression in the Sixth Circuit.

Section 703 of Title VII of the Civil Rights Act of 1964, as amended, (42 U. S.C. § 2000e–2), provides in pertinent part:

"(a) It shall be an unlawful employment practice for an employer—

(1) . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . .; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's . . . sex . . ."

\* \* \* \* \* \*

"(e) (1) it shall not be an unlawful employment practice for an employer to hire and employ employees . . . on the basis of [their] . . . sex . . . in those certain instances where . . . sex . . . is a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise."

There have been divided results from the courts that have confronted this issue and applied this statute. Some courts have found conduct similar to the defendant's in this case violative of Title VII, Willingham v. Macon Tel. Publishing Co., 482 F.2d 535 (5th Cir. 1973); Aros v. McDonnell Douglas Corp., 348 F.Supp. 661 (C.D.Cal.1972); Donohue v. Shoe Corp. of America, 337 F.Supp. 1357 (C.D.Cal.1972); Rafford v. Randle Eastern Ambulance Service, Inc., 348 F. Supp. 316 (D.C.Fla.1972); Roberts v. General Mills, Inc., *supra*. Other courts have not found defendant's conduct violative of Title VII. Dodge v. Giant Food, Inc., 488 F.2d 1333 (D.C.Cir. 1973); Fa-

---

2. In Roberts v. General Mills, Inc., 337 F. Supp. 1055 (N.D.Ohio, 1971), the plaintiff, a male employee, contended the defendant's rule that men must wear hats and women must wear hairnets, discriminated against him on the basis of sex because he could not let his hair grow long and wear a hairnet in-

stead of a hat. In denying the defendant's motion for summary judgment, the court held that the defendant's rule was made on a generic stereotype basis and that it deprived the plaintiff of his employment opportunities in violation of 42 U.S.C. § 2000e–2(a).

gan v. National Cash Register Co., 157 U.S.App.D.C. 15, 481 F.2d 1115 (1973); Boyce v. Safeway Stores, Inc., 351 F. Supp. 402 (D.D.C.1972); Baker v. California Land Title Co., 349 F.Supp. 235 (C.D.Cal.1972).

While it appears the determination in each of those cases turned on their particular facts, the approach taken for application of the statute in those cases varied.

 The proper approach to determine the issue under this statute is to ascertain if use of the defendant's grooming code adversely affects, as described in the statute, the employment of men or women. Only if the grooming code is used as a device to prevent or hinder employment, or the enjoyment thereof of one sex group over the other as set forth in the statute, should such a code be held to discriminate *on the basis of sex* as proscribed by Section 703 of Title VII of the Civil Rights Act of 1964, as amended, (42 U.S.C. § 2000e–2). It is not necessary to determine if the provisions of the grooming code are "a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise" (§ 703[e], Title VII, Civil Rights Act of 1964, as amended, [42 U. S.C. § 2000e–2]) unless and until discrimination *on the basis of sex* has been found as stated above. If, however, the plaintiff has shown that such discrimination exists the employer has the burden of establishing this exception to

avoid liability under the law. Dodge v. Giant Food, Inc., *supra*.[3]

It should be noted that the plaintiff in this case makes no allegation that the defendant's separate hair-length regulations are a guise or pretext for failing to employ members of one sex, or that a person of a different sex was employed in his place. Nor does he contend that the other separate grooming regulations of the defendant discriminate against him on the basis of sex. Instead, this case involves a male who was employed and who complied with the defendant's hair-length regulation for almost five (5) years before deciding to cease his compliance.

 Although the legislative history of the sex discrimination provision of Title VII is sparse,[4] it is clear that Title VII serves the important goal of eliminating arbitrary sex discrimination in employment. Dodge v. Giant Food, Inc., *supra; Cf.,* Griggs v. Duke Power Co., 401 U.S. 424, 429–430, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). It is important that Title VII be given fair application. The scope of application of this legislation should be commensurate with its desired, responsible objectives. As the court stated in Boyce v. Safeway Stores, Inc., *supra*:

> "The laws outlawing sex discrimination are important. They are a significant advance. They must be realistically interpreted or they will be ignored or displaced." 351 F.Supp. at 404.

3. Examination of the proceedings before the Equal Employment Opportunity Commission, which resulted in a favorable determination for the plaintiff on July 3, 1973, discloses that this issue was given only cursory analysis. The Commission merely determined that "the Respondent's hair-length policy discriminates against the charging party and males as a class because of their sex and, as such, is violative of Title VII as amended."

4. The addition of sex as a forbidden basis of discrimination in employment was offered as a floor amendment to Title VII in the House, without any prior legislative hearings or debate. The original proponent of the

measure was a southern Congressman who voted against the Act, and whose strategy was allegedly to "clutter up" Title VII so that it would never pass at all. The passage of the amendment, and its subsequent enactment into law, came without even a minimum of congressional investigation into an area with implications that are only beginning to pierce the consciousness and conscience of America. Note, Developments in the Law, Employment Discrimination and Title VII of the Civil Rights Act of 1964, 84 Harv.L.Rev. 1109, 1167 (1971). *See also,* Boyce v. Safeway Stores, Inc., *supra,* 351 F. Supp. at 403.

Clearly at the time the Act was passed, women were discriminated against in employment in many ways. Aside from those members of Congress who simply desired to clutter the bill, the major support for the inclusion of the provision relating to sex came from those who desired to make the opportunities for women in employment equal to men. Although couched in terms of non-discrimination on the basis of sex in compensation, terms, conditions or privileges of employment, the courts, in applying the Act to bring equality among the sexes in these areas, must be specially vigilant in examining all forms of employer-made rules and regulations that tend to make it more difficult for a woman to get, enjoy or keep a job. Such regulations, even when based on immutable characteristics personal to women, should be striken as discriminatory devices if they in any way adversely affect the employment of women, as broadly defined in Section 703(a), unless, of course, they are bona fide occupational qualifications necessary to the operation of the employer's business.

 On the other hand, although under this section men as well as women are protected from sex-based job discrimination, Rafford v. Randle Eastern Ambulance Service, Inc., *supra*; Diaz v. Pan American World Airways, Inc., 442 F.2d 385 (5th Cir. 1971), cert. denied, 404 U.S. 950, 92 S.Ct. 275, 30 L.Ed.2d 267, the man needs no such broad protection to be treated equally under the law. Rules and regulations of employers based on personal, mutable characteristics of men, used by the employer to choose one or more men over other men in the various aspects of employment, do not discriminate against men *on the basis of sex*. Such discrimination, if it does exist, without a further showing that it is used in some way to adversely affect the employment of men, as defined in the statute, is not illegal discrimination under the statute. A male hair-length regulation, while specially defined for men and different than for women, does not discriminate on the bas-

is of sex without a further showing that it is used to hinder men from getting, enjoying or keeping jobs.

The defendant's separate hair-length regulation in this case, while sex based, does not: limit employment opportunities by making distinctions based on immutable, personal characteristics; represent an attempt by the defendant to prevent the employment of a particular sex; pose distinct employment disadvantages for one sex and, therefore, does not discriminate against male employees on the basis of sex in violation of Title VII of the Civil Rights Act of 1964, as amended, (42 U.S.C. § 2000e–2). Because of this result the court need not determine whether hair length is a bona fide occupational qualification in this case.

The defendant's motion for summary judgment is granted.

So ordered.