William **BARKER**, Plaintiff-Appellant,

v.

**TAFT BROADCASTING COMPANY,**
Defendant-Appellee.

No. 75–2397.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 7, 1976.
Decided Feb. 11, 1977.

Arnold L. Bortz, Cincinnati, Ohio, for plaintiff-appellant.

Lawrence D. Walker, Cincinnati, Ohio, for defendant-appellee.

Before McCREE, LIVELY and ENGEL, Circuit Judges.

ENGEL, Circuit Judge.

The issue on appeal is whether an employer's grooming code which mandates a shorter hair length for men than for women constitutes a prima facie violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2. Plaintiff contends that his discharge from employment by defendant because of his hair length is sex discrimination because female employees were permitted to wear long hair. Plaintiff had been employed as an "artist-craftsman" since November 1972 by defendant's Kings Island Division, which operates a recreation and amusement park. The district court dismissed plaintiff's complaint under Rule 12(b)(6) for failure to state a claim upon which relief could be granted.

Considered in the light most favorable to the plaintiff the complaint in this case charges that the employer maintained a grooming code for men and women employees which limited the manner in which the hair of the men could be cut and limited the manner in which the hair of women could be styled; and that the plaintiff was discharged for failing to comply with the code provision relating to hair length. There is no allegation that women employees who failed to comply with the code provisions relating to hair style were not discharged. Nor is there any allegation that the employer refused to hire men who did not comply with the code, but did hire women who were not in compliance. We conclude that the complaint does not state a cause of action under Title VII for discrimination on the basis of sex within the traditional meaning of that term.

In so holding we are in agreement with the other courts of appeals that have considered this question. *Dodge v. Giant Food, Inc.*, 160 U.S.App.D.C. 9, 488 F.2d 1333 (1973); *Baker v. California Land Title Co.*, 507 F.2d 895 (9th Cir. 1974); *Willingham v. Macon Telegraph Publishing Co.*, 507 F.2d 1084 (5th Cir. 1975) (en banc), rev'g 482 F.2d 535 (5th Cir. 1973); *Knott v. Missouri Pacific Railway Co.*, 527 F.2d 1249 (8th Cir. 1975); *Longo v. Carlisle DeCoppet & Co.*, 537 F.2d 685 (2nd Cir. 1976); *Earwood v. Continental Southeastern Lines, Inc.*, 539 F.2d 1349 (4th Cir. 1976). We agree with the Second Circuit in *Longo v. Carlisle De-Coppet*, supra, that "without necessarily adopting all of the reasoning of those opinions, we are content to abide by this unanimous result."

The prohibition of sex discrimination must be interpreted in light of the purpose and intent of Congress in enacting the Civil Rights Act of 1964. Employer grooming codes requiring different hair lengths for men and women bear such a negligible relation to the purposes of Title VII that we cannot conclude they were a target of the Act.

When Congress makes it unlawful for an employer to "discriminate . . . on the basis of . . . sex . . .", without further explanation of its meaning, we should not readily infer that it meant something different than what the

concept of discrimination has traditionally meant. *General Electric v. Gilbert,* 429 U.S. 125, 145, 97 S.Ct. 401, 413, 50 L.Ed.2d 343 (1976)

Affirmed.

McCREE, Circuit Judge (dissenting).

I respectfully dissent. William Barker appeals from the dismissal of his complaint against Taft Broadcasting Company (Taft). The complaint alleged that Barker had been employed as an "artist-craftsman" since November 1972 by the defendant's Kings Island Division (Kings Island), which operated a recreation and amusement park. It further alleged that Kings Island adopted a grooming code that explicitly permitted female employees to wear long hair but forbade male employees to do so. The complaint alleged that Kings Island discharged Barker and two other plaintiffs because their hair was longer than the code permitted even though their hair was of comparable length at time of hire, and that their discharge was an intentional violation of § 703 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2, and of Ohio Rev.Code § 4112.02. Plaintiffs sought reinstatement, back pay, compensatory damages, and attorney's fees and costs.

Instead of filing an answer, Taft filed a motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the complaint for failure to state a claim upon which relief can be granted. Defendant urged that employee hair length regulations cannot constitute sex discrimination under Title VII of the Civil Rights Act of 1964, or under Ohio Rev.Code § 4112.02, and that plaintiffs had neither a "private right of action [n]or standing to sue" under the Ohio statute.

The district court concluded as a matter of law that a code that discriminates between men and women with respect to permissible hair length does not violate Title VII, and that there was no basis for federal jurisdiction over the state claim once the federal claim had been determined to be inadequate. It therefore dismissed the complaint.

On appeal, Barker contends that the dismissal of the federal claim was erroneous. The majority opinion concludes that the complaint does not state a prima facie violation of § 703(a)(1), 42 U.S.C. § 2000e–2(a)(1), and it affirms the judgment of dismissal. I would reverse because I believe that a prima facie violation is stated.

Because we are considering an appeal from a dismissal for failure to state a claim upon which relief can be granted, we must accept each allegation of the complaint as true. If upon any view the allegations would constitute a violation, the dismissal must be reversed.

On its face, the statute appears to forbid defendant's hair length policy. Section 703(a)(1) provides,

> (a) It shall be an unlawful employment practice for an employer
>> (1) to . . . discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ;

Defendant's grooming code permits a female employee, but not a male employee, to wear long hair. It accordingly "discriminate[s] against [Barker] with respect to his terms [and] conditions of . . . employment, because of [his] sex." Defendant would not have fired a woman whose hair was as long as appellant's. Accordingly, it "discharge[d] [Barker] because of [his] sex." Although the employer may be able affirmatively to raise successful defenses, the complaint, taken as true, states a literal violation of the statute.

Nonetheless, every other circuit that has considered this question has concluded that employer hair regulations that prescribe different lengths or styles for men and women do not, prima facie, violate Title VII.[1] Within our own circuit, the district

---

1. *Longo v. Carlisle DeCoppet & Co.,* 537 F.2d 685 (2d Cir. 1976) (per curiam); *Earwood v.* *Continental Southeastern Lines, Inc.,* 539 F.2d 1349 (4th Cir. 1976) (divided court); *Willing-*

courts have disagreed on this issue. Compare *Bujel v. Borman Food Stores, Inc.*, 384 F.Supp. 141 (E.D.Mich.1974), with *Roberts v. General Mills, Inc.*, 337 F.Supp. 1055 (N.D.Ohio 1971). The Equal Employment Opportunity Commission has repeatedly ruled that hair regulations that differ for men and women are unlawful unless justified as a bona fide occupational qualification. See, *e. g.*, E.E.O.C. Decision No. 72–1380, 4 F.E.P. Cases 846, 847 (1972). Because the E.E.O.C. is charged with the administration of Title VII, its interpretation of the statute is entitled to "great deference." *Griggs v. Duke Power Co.*, 401 U.S. 424, 433–34, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). Our own court has not previously addressed this issue.

The courts that have considered this question have advanced two theories to justify their exclusion of hair regulations from the purview of Title VII.[2] Some courts have suggested that Title VII forbids only discrimination on the basis of immutable characteristics.[3] *Fagan v. National Cash Register Co.*, 157 U.S.App.D.C. 15, 481 F.2d 1115, 1125 (1973); *Baker v. Calif. Land Title Co.*, 507 F.2d 895, 897 (9th Cir. 1974); *Bujel v. Borman Food Stores, Inc.*, 384 F.Supp. 141, 145 (E.D.Mich.1974).

However, in *Phillips v. Martin Marietta Corp.*, 400 U.S. 542, 91 S.Ct. 496, 27 L.Ed.2d 613 (1971), the Court considered a policy under which women with pre-school-age children would not be hired, but men with pre-school-age children would be hired. The Court vacated summary judgment for the employer, holding that a prima facie violation of § 703(a) had been pleaded:

> The Court of Appeals therefore erred in reading this section as permitting one hiring policy for women and another for men—each having pre-school-age children. 400 U.S. at 544, 91 S.Ct. at 498.

Because having custody of pre-school-age children is obviously not an immutable

---

ham v. Macon Telegraph Pub. Co., 507 F.2d 1084 (5th Cir. 1975) (en banc), rev'g 482 F.2d 535 (5th Cir. 1973); Knott v. Missouri Pac. Ry. Co., 527 F.2d 1249 (8th Cir. 1975); Baker v. Calif. Land Title Co., 507 F.2d 895 (9th Cir. 1974).

But see Doyle v. Buffalo Sidewalk Cafe, Inc., 4 F.E.P. Cases 1140 (1972), in which the New York Supreme Court for Erie County applied § 296 of the New York Human Rights Act, which is similar to Title VII and has been construed as setting the same employment standards as Title VII. The court there concluded that the statute was violated by a refusal to hire a busboy because of a sexually discriminatory hair policy.

In Fagan v. National Cash Register Co., 157 U.S.App.D.C. 15, 481 F.2d 1115 (1973) (divided court), a panel of the D. C. Circuit discussed the question whether hair regulations could be a prima facie violation of Title VII, and indicated that it might be persuaded that there could be no such violation. However, the court relied on the determination that the employer in that case had established a bona fide occupational qualification (BFOQ) defense under § 703(e). 481 F.2d at 1126. In Dodge v. Giant Food, Inc., 160 U.S.App.D.C. 9, 488 F.2d 1333 (1973), another panel, in a per curiam opinion, relied on Fagan as settling the law in that circuit that there is no prima facie violation.

However, in a recent case, the District Court of the District of Columbia ruled that a regulation which forbade female employees to wear eyeglasses, but allowed male employees to wear them, was a violation of § 703(a). *Laffey v. Northwest Airlines*, 366 F.Supp. 763, 790 (D.C.1973). The court later enjoined that practice, 374 F.Supp. 1382, 1388 (D.C.1974), aff'd other grounds, Nos. 74–1791 and 75–1334 (D.C. Cir. Oct. 20, 1976), see slip op. at 17 n. 81. It is difficult to understand what the principled difference between an eyeglass policy and a hair-length policy might be for the purposes of finding a prima facie violation.

2. The majority opinion does not choose either rationale in supporting its holding. Instead, it merely "abide[s] by th[e] unanimous result" of the other circuits which have considered the issue, "without necessarily adopting all of the reasoning of those opinions . . . ." The majority opinion also asserts that hair regulations "bear . . . a negligible relation to the purposes of Title VII . . . ," but it does not state what those purposes are and how hair regulations differ from the "intended" targets of Title VII. The majority opinion thereby fails to establish a standard according to which a sex-based grooming code does not "discriminate . . . because of . . . sex . . . ."

3. It is difficult to understand how such a limitation could be consistent with the proscription, also within § 703(a), of discrimination because of an employee's religion. An employee's religion is certainly not immutable.

characteristic, the *Fagan* construction cannot be correct.

The Fourth and Fifth Circuits, however, have attempted to distinguish *Phillips* by reasoning that Title VII forbids discrimination either where it is based on an immutable characteristic *or* where it affects a fundamental right. Apparently, they would distinguish *Phillips* by regarding the right to have children in the home as a fundamental right, like the right to marry and the right to procreate. *Earwood v. Continental Southeastern Lines, Inc.*, 539 F.2d 1349, 1351 (4th Cir. 1976); *Willingham v. Macon Telegraph Publishing Co.*, 507 F.2d 1084, 1091 (5th Cir. 1975).

Fundamental rights analysis has developed as an aspect of the protection which the Fourteenth Amendment affords to private action against governmental invasion. See, *e. g., Skinner v. Oklahoma*, 316 U.S. 535, 541, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942). But there appears to be no justification for limiting an employee's *statutory* rights against a private employer to the circumstances in which a person enjoys *constitutional* protection against government action. The Supreme Court has stated in *Washington v. Davis*, 426 U.S. 229, 245, 96 S.Ct. 2040, 2050, 48 L.Ed.2d 597 (1976), that employment discrimination is subject to "more probing judicial review" under Title VII than under the Fourteenth Amendment.

The *Willingham* and *Earwood* courts apparently regard some discriminations as either *de minimis* or impliedly permitted by the statute. But in *Phillips*, the Court did not look to the importance, the significance, the mutability, or the fundamental nature of the characteristic that the employer sought to regulate. The Supreme Court limited its inquiry to whether there was different treatment of male and female employees. The *Earwood* and *Willingham* courts, by attempting to exclude from the protection of the Act certain discriminations that they regard as relatively insubstantial impingements on employees, do not follow the analysis used in *Phillips*.

Nor does the legislative history afford support for the immutable characteristic—fundamental right limitation on § 703.[4] The courts have relied upon Supreme Court dictum in *Griggs v. Duke Power Co.*, 401 U.S. 424, 429–430, 91 S.Ct. 849, 853, 28 L.Ed.2d 758 (1971):

> The objective of Congress . . . was to achieve equality of employment opportunities and remove barriers that have operated in the past to favor an identifiable group of white employees over other employees.

Quoted in *Willingham*, 507 F.2d at 1084, and *Baker*, 507 F.2d at 897.

They have also cited House Report No. 92–238, which discussed the need for the 1972 Amendments to Title VII.[5] Both authori-

---

**4.** At the outset, we question the usefulness of the general remarks in the introduction of the House Report on the 1972 Amendments, infra at n. 5, because the remarks were tangential at best and were not intended to apply to the problem at hand. Reliance would be particularly troubling because the statute itself is so clear on its face.

The provision on sex discrimination in employment reportedly was added at the last moment by opponents of the prohibitions of race discrimination, in an unsuccessful attempt to sink the bill by overloading it with unpopular provisions. See *Developments in the Law— Employment Discrimination and Title VII of the Civil Rights Act of 1964*, 84 Harv.L.Rev. 1109, 1167 (1971). It is therefore doubtful that many members of Congress who spoke on the original bill in 1964 had any intentions one way or another with respect to the forms of sex discrimination.

**5.** House Report No. 92–238 states:

> Women are subject to economic deprivation as a class. Their self-fulfillment and development is frustrated because of their sex. Numerous studies have shown that women are placed in the less challenging, the less responsible and the less remunerative positions on the basis of their sex alone.
>
> \*    \*    \*    \*    \*    \*
>
> This Committee believes that women's rights are not judicial divertisements. Discrimination against women is no less serious than other forms of prohibited employment practices and is to be accorded the same degree of social concern given to any type of unlawful discrimination.
>
> \*    \*    \*    \*    \*.    \*
>
> The time has come to bring an end to job discrimination once and for all, and to insure every citizen the opportunity for the decent

ties are said to show that Congress was concerned *only* to promote equal employment *opportunity*. Because it is entirely within the power of employees to alter their hairstyles, and because some courts have regarded such alterations as an insignificant sacrifice, employers' hair length regulations are said not to affect the *opportunity* of an individual to obtain employment.

However, both of these authorities are cited out of context. In *Griggs*, the Court considered an employment practice that was neutral on its face, but discriminatory in effect against black persons. The Court ruled that because Congress intended to promote employment opportunity, the fact that use of intelligence tests was neutral on its face did not avoid liability of the employer where the tests were discriminatory in effect: "Congress directed the thrust of the Act to the *consequences* of employment practices, *not simply* the motivation." 401 U.S. at 432, 91 S.Ct. at 854 (emphasis in last phrase supplied). In this case, however, the employment practice discriminates by its very terms between men and women. Because both the consequences and the explicit intent of the hair length regulations are to establish different "terms [and] conditions" of employment for men than for

women, it is unnecessary to look to Congressional intent to decide whether § 703(a) has been violated.

The 1972 Amendments, with few exceptions, were procedural in nature. They did not, for the most part, affect the substantive rights of employees against private employers. No changes in § 703(a)(1) were even considered. Therefore the general comments in the House Report should not be construed to narrow the scope of § 703.[6]

But even if the unambiguous words of the statute should be regarded as limited by the ambiguous language in the legislative history, a prima facie violation would still be stated by the complaint, because hair regulations *do* affect the *opportunity* of individuals to obtain employment on the same "terms [and] conditions" of employment without *regard* to sex. The prohibition of long hair unquestionably imposes a term or condition on employment.

Because an individual chooses to wear his hair in a particular way instead of in an alternative way, that hairstyle must have some value to him.[7] If an employer requires a particular hairstyle as a condition of employment, he reduces the value of the job just as surely as if he had imposed a

---

self-respect that accompanies a job commensurate with one's abilities.
U.S.Code Cong. & Admin.News, pp. 2140–41 (1972).
Quoted in *Knott*, 527 F.2d at 1251 n. 2, and *Baker*, 507 F.2d at 896 n. 2.

**6.** The quoted portions of the House Report stress the effect of employment discrimination on women. Yet it is settled law that men, as well as women, are protected by § 703(a) against sex discrimination. See *Diaz v. Pan Am. World Airways, Inc.*, 442 F.2d 385 (5th Cir. 1971).

In addition to the passages quoted by the other circuits which have discussed this question, the House Report also contains the following discussion:
[T]he courts have done much to create a body of law clearly disapproving of sex discrimination in employment.[1] Despite the efforts of the courts and the [Equal Employment Opportunity] Commission, discrimination against women continues to be widespread.
1972 U.S.Code Cong. and Admin.News, p. 2141.

The procedural improvements of the 1972 Amendments were designed to increase the effects of that developed law on concrete work situations.

One of the examples of the improvements in substantive law which was cited by the House Report at n. 1 was *Phillips*, which adopted the analysis which we have used in this opinion. Thus the legislative history *supports* our conclusion that exclusion of a male where the employer would employ a similarly situated female, simply because they both have long hair, constitutes a *prima facie violation of* § 703(a).

**7.** Indeed, the persistence of Title VII and constitutional litigation concerning the permissibility of hair regulations imposed by public and private defendants suggests that to many individuals that value is quite high. Although the majority opinion asserts that grooming codes "bear . . . a negligible relation to the purposes of Title VII . . . ," it can hardly be contended that the subject matter of the hair regulation suits is *de minimis*.

grooming code which was financially more onerous for employees of one sex.

For example, if a grooming code allowed male bank tellers with poor vision to wear eyeglasses, but forbade female bank tellers with poor vision to wear eyeglasses, the women would be required to spend more money for contact lenses. However, they would not have been deprived of the *opportunity* to obtain a job; therefore the approach of the majority would apparently permit that regulation without even a showing that it was a bona fide occupational qualification.

Similarly, suppose that an employer established a policy which required employees in a clerical or secretarial pool to sign out if they expect to be away from their desks. Suppose further that the policy required men to sign out only if they expected to be away from their desks for more than thirty minutes, but women to sign out whenever they would be away from their desks for more than fifteen minutes. Surely neither the fact that the discriminatory policy was enforced "equally" against male and female employees who violated its terms, nor the fact that the policy would not deprive women of an *opportunity* to obtain a job, would negate the discriminatory character of the policy, nor exclude the policy from the purview of Title VII.

If an employer established a discriminatory eyeglass or signout policy similar to the ones discussed above, I have little doubt that a prima facie violation of § 703(a) would be apparent. In the case of hair regulation, as in the cases of sex-based eyeglass or signout policies, the condition of employment constitutes a prima facie violation of § 703(a). In all three cases, the employer must prove that its regulation establishes a bona fide occupational qualification to avoid offending the statute. See, e. g., *Diaz v. Pan Am. World Airways, Inc.,* 442 F.2d 385 (5th Cir. 1971).

The majority opinion implies that the Supreme Court's recent decision in *General Electric Co. v. Gilbert,* 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976), supports the result it reaches in this case.

In *Gilbert,* the Opinion of the Court, which was limited by two concurring opinions and rejected by three dissenters, recognized that a prima facie violation of Title VII may be established in a case in which there would be no prima facie violation of the Equal Protection Clause by a public defendant. At 133, 97 S.Ct. at 407. However, the Court stated that cases applying the Equal Protection Clause may be a "useful starting point" in interpreting the *language* of Title VII. At 133, 97 S.Ct. at 407. The Court concluded that the exclusion of pregnancies from the disability benefits considered in *Gilbert* was neither "discrimination based on sex" nor a "simple pretext for discriminating against women." At 136, 97 S.Ct. at 408. Finally, the Court pointed out that the plaintiffs in *Gilbert* "have not attempted to meet the burden of demonstrating a gender-based discriminatory effect . . . ." At 137, 97 S.Ct. at 409.

In this case, however, Taft's discrimination is admittedly "based on sex," but Taft urges that Congress did not intend to forbid discrimination based on sex unless other conditions are fulfilled. This argument is unsupported by legislative history and contradicted by established Title VII analysis.

I express no view about whether Taft would be able to demonstrate that its particular hair length regulation implements a bona fide occupational qualification as provided by § 703(e). I would hold only that Barker's complaint states a prima facie violation of § 703(a), and that to avoid liability Taft should be required either to rebut the allegations or to prove a valid defense.