Karen C. O'DONNELL, et al.,
Plaintiffs,

v.

BURLINGTON COAT FACTORY WAREHOUSE, INC., et al.,
Defendants.

No. C–1–86–0069.

United States District Court,
S.D. Ohio, W.D.

Feb. 24, 1987.

Robert F. Laufman, Cincinnati, Ohio, for plaintiffs.

Paul C. Sunderland, Cincinnati, Ohio, for defendants.

## OPINION AND ORDER

SPIEGEL, District Judge.

This matter came on for consideration of defendants' motion for summary judgment (Doc. 6), defendants' reply (Doc. 13), plaintiffs' partial motion for summary judgment (Doc. 8), defendants' memorandum in opposition (Doc. 12), and plaintiffs' reply (Doc. 14). Oral arguments on these cross motions for summary judgment were heard on November 7, 1986. For the reasons stated below, we deny summary judgment to defendants but grant it in favor of plaintiffs.

### Background

In this sex discrimination action plaintiffs, female sales clerks at defendants' retail store, challenge defendants' dress code as being violative of Title VII of the Civil Rights Act of 1964. The dress code in question requires female sales clerks to wear a "smock," while male sales clerks only are required to wear business attire consisting of slacks, shirt and a necktie. The smocks are supplied to the female sales clerks at no cost.

After complaining that the smock requirement for women is discriminatory, plaintiffs refused to wear the smocks and instead wore regular business attire. Plaintiffs filed sex discrimination charges with the EEOC on August 18, 1983. Thereafter, plaintiffs reported for work wearing a blouse and tie and each day they were suspended. On August 30, 1983, plaintiffs were discharged when they refused to wear smocks. Plaintiffs filed charges with the EEOC claiming their discharge was sex discrimination and retaliation. Subsequently, the EEOC determined that there was reasonable cause to believe that the charge was true. After attempts at conciliation proved futile, plaintiffs commenced the present action in this Court.

Both parties agree that the issue before this Court on summary judgment is whether defendants' dress code requiring female sales clerks to wear a smock while allowing male sales clerks to wear a shirt and tie is discriminatory under Title VII. The parties, however, disagree upon whether there is a remaining claim for retaliatory discharge that is not before this Court on the pending cross motions for summary judgment. On the one hand, plaintiffs contend they have a claim that they were discharged in retaliation for protesting defendants' allegedly discriminatory practices and for filing charges before the EEOC. Defendants, on the other hand, argue that plaintiffs waived their retaliation claim by stipulating that the only issue in this case is the challenge to the smock rule. To support this contention, defendants point to the following statements plaintiffs' counsel made during the Phelan-Long deposition.

Mr. Sunderland: Let's enter into a stipulation based on that off-the-record conversation. The stipulation would be that the only issue in this case from the plaintiffs' perspective is they believe it was sex discrimination for the company to require female salesclerks to wear a smock, whereas male salesclerks were not required to wear a smock. Is that an accurate statement of the stipulation, Bob?

Mr. Laufman: All right. I guess it's a matter—off the record.

(discussion off the record).

Mr. Sunderland: Back on the record. Can we stipulate that plaintiffs do not contend that there is any evidence of a general sex bias? There issue or their complaint in this case relates only to the requirement that female salesclerks wear the smock, where male salesclerks do not wear the smock or are not required to wear the smock?

Mr. Laufman: Or that the rule was not enforced against the men. It was enforced against the women.

Mr. Sunderland: Off the record.

(discussion off the record).

(Stipulation read).

Mr. Sunderland: That leaves you basically free.

Mr. Laufman: Not really. It doesn't talk about enforcement, discriminatory enforcement.

Mr. Sunderland: Sure, it says they are not required to.

Mr. Laufman: I am not trying to cut you off. The discriminatory enforcement of

a rule that says smocks are provided and only enforced against the women.

Mr. Sunderland: Off the record.

(Discussion off the record.)

Mr. Sunderland: Let's stipulate that in this case there is no evidence of any general sex bias; the only issue here is the smocks. We can enter into that one, Bob.

Mr. Laufman: Uh-huh.

Phelan-Long Depo., at 40–42.

■ Plaintiffs argue that defendants' reference to the identified statements made in the Phelan-Long deposition is taken out of context. Plaintiffs claim that the stipulation arose during discussions of the sex discrimination charge and did not relate to the retaliatory discharge claim. *See* Phelan-Long depo. at 35–42. After reviewing the relevant sections of the Phelan-Long deposition, we agree with plaintiffs that they have not waived their claim for retaliatory discharge. Presently, we proceed with our analysis of the issue raised by the parties on their cross motions for summary judgment.

## Discussion

■ In considering a motion for summary judgment, the question we must decide is whether there is "no genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The Court cannot try issues of fact on a Rule 56 motion but is empowered only to determine whether there are issues to be tried. *In Re Atlas Concrete Pipe, Inc.,* 668 F.2d 905, 908 (6th Cir.1982). "[T]he District Court [is] obligated to consider not only the materials specifically offered in support of the motion, but also all 'pleadings, depositions, answers to interrogatories, and admissions' properly on file and thus properly before [the] court." *Smith v. Hudson,* 600 F.2d 60, 63 (6th Cir.), *cert. denied,* 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979), *quoting* Rule 56(c), Fed.R.Civ.P. With regard to the pending motions, the parties have agreed to all material facts and thus, we can resolve this dispute as a matter of law.

In their motion for summary judgment, defendants claim that the dress code in question does not make an impermissible distinction between the sexes and thus, plaintiffs' claim is not actionable under Title VII. Citing the Sixth Circuit's decision in *Barker v. Taft Broadcasting Co.,* 549 F.2d 400 (6th Cir.1977), defendants' contend that distinctions between the sexes that do not adversely effect the terms and conditions of employment or employment opportunities do not violate Title VII. In *Barker,* the Court upheld an employer's grooming code which mandated shorter hair lengths for men than for women. *Id.* at 401. Importantly, this grooming code set standards for both sexes: it regulated the length of men's hair and the styles for women's hair. Most circuit courts considering this issue are in agreement, at least in result if not reasoning. *See, e.g., Dodge v. Giant Food, Inc.,* 160 U.S.App.D.C. 9, 488 F.2d 1333 (1973); *Baker v. California Land Title Co.,* 507 F.2d 895 (9th Cir.1974); *Willingham v. Macon Telegraph Pub. Co.,* 507 F.2d 1084 (5th Cir.1975) (en banc), *rev'g,* 482 F.2d 535 (5th Cir.1973); *Knott v. Missouri Pacific Railroad Co.,* 527 F.2d 1249 (8th Cir.1975); *Longo v. Carlisle, DeCoppet & Co.,* 537 F.2d 685 (2d Cir.1976); *Earwood v. Continental Southeastern Lines, Inc.,* 539 F.2d 1349 (4th Cir.1976).

According to defendants, the question we must decide is whether the differences in treatment created disadvantages for women in their compensation, terms, conditions or privileges of employment or employment opportunities. Because plaintiffs stipulated that wearing the smocks had no effect on their salary, benefits, hours of employment, raises, employment evaluations or any other term or condition of employment (Phelan-Long deo. at 37–38), defendants argue that the distinction in question is not discriminatory. Analogizing the dress requirement here to the grooming code in *Barker,* defendants claim both sexes had equal burdens with respect to their dress requirements: female employees had to wear a smock and male employees had to wear a shirt and tie.

Plaintiffs acknowledge that Title VII does not prohibit all differences in treat-

ment between the sexes but claim that a rule requiring only women to wear a smock does violate Title VII. In support of their position, plaintiffs claim that the instant case should not be governed by the "hair length/grooming" line of decisions cited by defendants. Rather, plaintiffs direct our attention to cases directly addressing "uniform" requirements that mandate different dress standards for male and female employees. *See Carroll v. Talman Fed. Sav. & Loan,* 604 F.2d 1028 (7th Cir.1979), *cert. denied* 445 U.S. 929, 100 S.Ct. 1316, 63 L.Ed.2d 762 (1980); *EEOC v. Clayton Federal S & L Ass'n,* 25 F.E.P. 841 (E.D.Mo. 1981).

In the lead case of *Carroll v. Talman Fed. Sav. & Loan,* 604 F.2d at 1030, a bank required its female tellers, officer and managerial employees to wear a uniform while male employees working in the same positions were required only to wear customary business attire. Unlike the case at bar, the female employees in *Talman* incurred the initial cost of their uniforms as well as subsequent cleaning and maintenance expenses. *Id.* The employer expressly maintained that the purpose of the uniform requirement was to reduce fashion competition among women. *Id.* at 1031. Since men do not engage in such competition, they do not need a uniform requirement. *Id.*

The Seventh Circuit held that personal appearance regulations with differing requirements for men and women do not violate Title VII as long as there is "some justification in commonly accepted social norms and are reasonably related to the employer's business needs." *Id.* at 1032. However, an employer who imposes separate dress requirements for men and women performing the same jobs will violate Title VII when one sex can wear regular business attire and the other must wear a uniform. *Id.* Finding the uniform requirement demeaning to women, the *Talman* Court stated: "[w]hile there is nothing offensive about uniforms *per se,* when some employees are uniformed and others are not there is a natural tendency to assume that the uniformed women have lesser professional status than their colleagues at-

tired in normal business clothes." *Id.* at 1033. The court found it significant that the employer had several non-discriminatory alternatives to accomplish its business goals. *Id.*

We agree with the holding and reasoning in *Talman* and find it directly applicable to the case at bar. Defendants, however, seek to distinguish *Talman.* Initially, we reject defendants' argument that a "smock" is not a uniform such as the one at issue in *Talman.* Even though the smock is worn over street clothes, we find it serves the same purpose, and in fact operates as a uniform.

More significantly, defendants point out that the regulation in *Talman* was based on the expressed sexual stereotype that women cannot exercise good judgment with respect to business attire. Here, by contrast, defendants claim there is no evidence that the smock requirement was based on any expressed sexual stereotype. Rather, the smock requirement was instituted to insure that female sales clerks were readily identifiable to defendants' customers.

Even though defendants have expressed no discirminatory motive for the "smock" rule, we find that the blatant effect of such a rule is to perpetuate sexual stereotypes. We believe the cornerstone of the *Talman* decision is that it is demeaning for one sex to wear a uniform when members of the other sex holding the same positions are allowed to wear professional business attire. In contrast to the "hair length" standards for male employees, the smock requirement finds no justification in accepted social norms. Moreover, as plaintiffs point out, defendants have several non-discriminatory alternatives for achieving the goal of sales clerk identification: both sexes could wear the smock, a distinguishing blazer or identifying badges on their professional attire. Thus, we find that the smock rule creates disadvantages to the conditions of employment of female sales clerks and hence, is a violation of Title VII.

Defendants also argue that plaintiffs willful refusal to obey managements'

order to wear the smock constituted insubordination and thus justified their discharge. However, although victims of discrimination are required to utilize the administrative process before filing a lawsuit, they are not required to abide by unlawful job requirements to keep their jobs while using the administrative process. *See Allen v. Lovejoy*, 553 F.2d 522 (6th Cir.1977) (backpay award to employee who was suspended for refusing to use married name); *EEOC v. Sage Realty Corporation*, 507 F.Supp. 599 (S.D.N.Y.1981). While plaintiffs filed charges with the EEOC in August 1983, the EEOC did not issue its determination that there was reasonable cause supporting plaintiffs claim until February 11, 1985. Hence, we reject defendants contention that we should find plaintiffs were discharged for insubordination and dismiss this case.

Having concluded that defendants' dress code constituted a violation of Title VII of the Civil Rights Act of 1964, we grant summary judgment on this issue to plaintiffs and deny summary judgment to defendants. Remaining for trial is the determination of damages on the discrimination claim we decide today as well as plaintiffs' claim for retaliatory discharge.

SO ORDERED.