MANION, Circuit Judge,
concurring in part and dissenting in part.
Having ruled agáinst AH.’s primary argument, the court decides this case on equal protection arguments that A.H. did not make, rooted in authority he did not cite. However, the court does not actually tell us why the policies here are not comparable under the correct standard. Rather, the court decides that the school loses *584 by default because the record is missing some of the grooming provisions that are applicable to female athletes. But there is enough in the record to compare the grooming policies applicable to male and female athletes, and if anything that is missing were included, it would only make the burden of the grooming policy applicable to male athletes even more clearly balanced out by the burden on female athletes. Although I agree with the court’s general summary of the law of equal protection, I write separately because the record does not establish any violation of the Equal Protection clause or Title IX.
Imitating a policy established by the celebrated Hoosier and legendary basketball coach John Wooden, Coach Meyer insists that the boys on the Greensburg basketball team cut their hair shorter than A.H. prefers to cut his hair. R. 77 at 10-11 ¶ 47 and n.- 4. Meyer hopes that this policy will promote team unity and at the same time project a clean-cut image, but A.H. doesn’t “feel like himself’ with a shorter haircut. R. 81 at 6 ¶ 26. The policy of the Greensburg school board allows the coach of each team to determine any limitation on his players’ hair length, and according to the parties’ stipulation, Meyer and the baseball coach are the only coaches at Greensburg who impose haircut requirements. See id. at 5 ¶ 22. A.H. refuses to be compared to the male athletes in other sports who do not have to cut their hair. Rather, because the members of the Greensburg girls basketball team do not have to cut their hair, A.H. claims he is being discriminated against because of his sex.
As the court recognizes, sex-based equal protection analysis is much more nuanced than a simple “but for” test. See Maj. Op. at 576-77. Discrimination based on sex violates the Equal Protection clause unless the state has an exceedingly persuasive justification. United States v. Virginia, 518 U.S. 515, 538, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996). However, maintaining different grooming standards for men and women is not usually discrimination. As the court points out, there is a line of authority which addresses differing grooming standards for men and women in the workplace. Maj. Op. at 577-79. From that line of authority, a rule emerges that differing grooming standards are not discrimination if they are comparable; for the standards to be comparable, they must “find some justification in commonly accepted social norms” or “generally accepted community standards,” be reasonably related to a legitimate interest, and be applied evenhandedly, not imposing an unequal burden. Id. (citing Carroll v. Talman Fed. Sav. & Loan Ass’n of Chi., 604 F.2d 1028, 1032 (7th Cir.1979); Barker v. Taft Broad. Co., 549 F.2d 400, 401 (6th Cir.1977); Earwood v. Cont’l Se. Lines, Inc., 539 F.2d 1349, 1350 (4th Cir.1976); Knott v. Mo. Pac. R. Co., 527 F.2d 1249, 1252 (8th Cir.1975); Willingham v. Macon Tel. Pub, Co., 507 F.2d 1084, 1092 (5th Cir.1975) (en banc); Dodge v. Giant Food, Inc., 488 F.2d 1333, 1337 (D.C.Cir.1973)). The rationale for this workplace rule is simple: requiring everyone to “look professional” (or any other appearance goal) may mean different things for men and women because of “common differences in customary dress.” Carroll, 604 F.2d at 1032 (citing Fagan v. Nat’l Cash Register Co., 481 F.2d 1115, 1117 n. 3 (D.C.Cir.1973)).
Consistently with the rule, we have held that enforcing materially different dress codes based on different interests — such as requiring that men wear business attire but women wear uniforms (so both look professional, but women avoid “dress competition”) — was sex discrimination. Carroll, 604 F.2d at 1032-33. But an evenhanded dress code — like a ban on wearing *585 clothing that societal standards say belongs to the opposite sex-has been upheld. Maj. Op. at 578 (citing Harper v. Edge-wood Bd. of Educ., 655 F.Supp. 1353, 1356 (S.D.Ohio 1987)). Most pertinently, courts have routinely upheld generally applicable grooming policies containing hair-length requirements for men but not for women. Id. at 577-78 (citing Barker, 549 F.2d at 401; Knott, 527 F.2d at 1252; Willingham, 507 F.2d at 1092; Dodge, 488 F.2d at 1337).
Further, the decisions cited above predominately concern Title VII — equal protection in the workplace. Those decisions seem to apply reasonably to disputes involving students in a school setting (which might comparatively be called the workplace for students), but we are now testing the decisions in the unique context of high school athletics. Under Title IX, the interests and factual realities are different from an ordinary workplace. Notably, this court has found the different interests significant enough to permit a “separate but equal” scheme in high school athletics, something that would not be tolerated in almost any workplace. See O’Connor v. Bd. of Ed. of Sch. Dist. No. 23, 645 F.2d 578, 581 (7th Cir.1981). Boys and girls play on separate teams for the obvious reason that, after age 12 or 13, the average male is bigger, taller, stronger, and faster than the average female competing in tfie same, sport and age level. .See id. at 581. Separation by gender is necessary, and beneficial. Sometimes there isn’t even overlap — there are no girls football teams, nor are there boys gymnastics or volleyball teams in Indiana.[1] The' requirement is equal athletic opportunity. See id. at 582 (discussing equal opportunity in the context of separate boys and girls basketball teams). Extracurricular athletic opportunity is offered amidst many practical, pe-dágogical, and biological considerations in addition to those “social norms” and “community-standards” that Title VII decisions have accepted as legitimate, nondiscriminatory distinctions.
With this context, the grooming decisions reveal a common thread: as long as a grooming or appearance policy applies to both men and women, the fact that it has different provisions based on different social norms or community standards for men and women (or based on different athletic traditions) is acceptable. Distinction is not discrimination. The court and I agree that the rule permits a policy that is different for men and women so long as it is comparable.
However, I,disagree with the court on whether the record is sufficient for us to apply the rule to the policy in this case. The court states that the facts of the record “reveal nothing that would permit a court to assess whether the standards are comparable, notwithstanding the disparity in the hair-length component of the grooming standards.” Máj. Op. at 580. Therefore, the court concludes that the record requires judgment in A.H.’s favor. ! disagree for two reasons.
First, the record is sufficient for us to compare the policies. One of the stipulations submitted to the district court was that the school had ap “Athletic Code [that] contains a specific section on grooming .with a ‘hair style’ provision that provides”:
Hair Styles which create' problems of health and sanitation, obstruct vision, or call.undue attention to the athlete-are *586 not acceptable. Athletes may not wear haircuts that include insignias, numbers, initials, or extremes in differing lengths. Mohawks are not acceptable, and hair coloring is not permitted. Each varsity head coach will be responsible for determining acceptable length of hair for a particular sport. Ask a coach before trying out for a team if you have a question regarding hair styles.
R. 81 at 4 ¶ 15; R. 19 Ex. C. This is the policy that applies to junior-high athletes of both sexes. I agree with the court that we should assume it is the same for senior-high athletes, Maj. Op. at 572, especially in light of the stipulation that counsel brought to our attention after oral argument: “No other Greensburg sports teams [besides the boys basketball and baseball teams] have policies governing hair length, but do have grooming 'policies.” R. 34 (emphasis added); see also R. 81 at 5 ¶ 22 (stipulating that girls do not have to abide by the haircut limitation). Accordingly, the record indicates that the policies for the boys and girls basketball teams are the same except for hair length. Only the hair length component is delegated to the coaches, and the stipulation indicates that only the boys baseball and basketball teams, have imposed a hair-length requirement[2] This kind of policy is permitted. See Barker, 549 F.2d at 401 (approving generally applicable grooming policy that required only men to cut their hair); Knott, 527 F.2d at 1250, 1252 (approving similar policy again requiring only men to cut their hair, but also imposing hair style policy on men alone); Willingham, 507 F.2d at 1087, 1092 (also approving a policy that prohibited only men from wearing-long hair); Dodge, 488 F.2d at 1337 (same). On the record we have, the grooming policies for boys and girls, as a whole, are comparable. Requiring men, but not women, to keep their hair at a certain length has never been held to be unequally burdensome. Further, there is no evidence (or argument) that the policies fail for other reasons; for example, there is no evidence that the distinctions are ungrounded in social norms or community standards or are arbitrary, nor is there evidence that the policies are not evenhandedly applied. Absent such proof, the otherwise comparable policies do not amount to sex discrimination. Carroll, 604 F.2d at 1032 (discussing these additional factors in finding sex discrimination).
Second, I disagree with the court’s imposition of an inappropriate burden on the school. I agree that once A.H. has made a prima facie case of discrimination by showing the different rule applicable to boys, the school had the burden to produce its contested policies to permit the court to assess whether they are comparable. Maj. Op. at 580; see, e:g., McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). But I disagree about how much production is enough to enable us to compare the policies. The court suggests that “it was up to the school district to show that the hair- *587 length policy is just one component of a comprehensive grooming code.” Very well. The school and A.H. have stipulated that the hair style rules are just one part of a comprehensive grooming and dress code applicable to boys and girls. R. 81 at 8-4, ¶¶ 12-15. Still, the court says we are lacking the “content of the grooming standards that are applicable to female athletes.” Maj. Op. at 580. But A.H.’s only argument — only allegation — is that the hair length standard is unfair, and the school has produced the hair style provision of the athletic code, and the coaches’ decisions that the boys basketball team has to cut its hair to a certain length and the girls basketball team does not (the only decisions delegated to the coaches). Yet the court says the school has not produced enough, while leaving the school guessing about what is enough content. Must the school produce every provision tangentially related to female grooming? Perhaps it would have been better had the school done this. But the only thing the content of any other female grooming provision could provide is evidence of more burdens for female athletes, which would make the policies more comparable. The omission of any grooming provisions applicable to female athletes is, at worst, immaterial.[3]
With enough of the policy to compare, the school’s burden to produce is satisfied and we continue with the normal routine. The burden of persuasion rests always with the plaintiff, who must now show that a comparison of the policies reveals disparities that amount to sex discrimination. If he does so, then it is the school’s burden to prove a justification. See Virginia, 518 U.S. at 533, 116 S.Ct. 2264; Dodge, 488 F.2d at 1335 (“It must first be determined that a discrimination on the basis of sex has occurred. If there is no sex discrimination, the inquiry ends. However, if the court concludes that an employer has discriminated on the basis of sex then it is the employer’s burden....”) (emphasis added). The fact that the school did not produce more of the grooming provisions applicable to girls just makes A.H.’s job easier — as Judge Easterbrook noted at oral argument, we should presume there are no other provisions applicable to girls, the best possible assumption from A.H.’s perspective. Oral Arg. at 16:44. But it is still A.H.’s burden to prove that the policies are not comparable. Even with the benefit of our presuming there are no additional burdens on female athletes, A.H. has not met his burden. Merely pointing to the fact that one component is different in an otherwise equally burdensome grooming policy for boys and girls is insufficient to prove that the policy is unduly burdensome for boys, and therefore dis-_ criminatory. See Barker, 549 F.2d at 401 (dismissing a complaint alleging that an “employer maintained a grooming code for men and women employees which limited the manner in which the hair of the men could be cut and limited the manner in which the hair of women could be styled” as insufficient to amount to discrimination); Knott, 527 F.2d at 1250 (holding that a hair-length policy applicable only to men when “[n]o similar regulation restricts the hair length or hair style of female employees” was not sex discrimination) (emphasis added); Willingham, 507 F.2d at 1087, 1092 (holding that a policy impos *588 ing a hair-length restriction on men alone was not sex-based discrimination).
The stipulations in this case indicate that there is an athletic “hair style” policy that applies to both male and female athletes, with a “cut” requirement that applies only to (some) male athletes (and there may be other provisions applicable to female athletes, but we assume there are not to A.H.’s favor). Even with no additional grooming provisions applicable to female athletes, and therefore no additional burdens on females athletes (besides the athletic code’s hairstyle provision), the policies are comparably burdensome. Knott, 527 F.2d at 1250 (holding that a policy was not discrimination where “[n]o similar regulation restricts the hair length or hair style of female employees, but both male and female employees must conform to certain standards of dress” — exactly the scenario stipulated to here). To the extent the policy in this case is distinguishable from the policies in Barker and Knott (and the other employment decisions) it is only because there should be more flexibility accorded the school administrators and coaches in the school athletics environment, especially given the hair-cut policy’s relation to athletic culture. The policies here are not sex-based discrimination, just like those in Barker and Knott were not.
A.H. could have argued that the policies are ungrounded in social norms, irrational, or not enforced evenhandedly. In fact, the court suggests that very short hair might no longer be grounded in social norms for male athletes. Maj. Op. at 581-82. But we have explicitly adopted a more deferential review of such questions. Carroll, 604 F.2d at 1032 (stating that “[s]o long as [appearance regulations] find some justification in commonly accepted social norms and are reasonably related to the employer’s business needs” they are not usually sex discrimination (emphasis added)). And besides, these types of arguments— ones which are external to the text of the policy — are things for which A.H. would have the burden to offer evidence, or at least make argument. Barker, 549 F.2d at 401 (“There is no allegation that women employees who failed to comply with the code provisions relating to hair style were not discharged. Nor is there any allegation that the employer refused to hire men who did not comply with the code, but did hire women who were not in compliance. We conclude that the complaint does not state a cause of action under Title VII for discrimination on the basis of sex within the traditional meaning of that term.”). But A.H. has not done so. Any win-by-failure-of-the-record regarding the enforcement or rationality of the policy must go to the school.
As a final note, the court mentions that the interests underlying the haircut component of the grooming policy — “clean-cut” appearance, team unity and uniformity— are equally applicable, but not “articulated or pursued” with respect to the girls teams (and the other boys teams). This is incorrect. The policy applicable to all boys and girls forbids “haircuts that include insignias, numbers, initials, or extremes in differing lengths. Mohawks are not acceptable, and hair coloring is not permitted” (requirements which A.H. points out that he complies with). All these prohibitions are at least partly grounded in the interests in team unity, uniformity, and a “clean-cut” appearance. The simple fact is that those interests may often manifest themselves in details that differ between boys and girls and among different sports. And again, proving that a difference in how an interest is manifested is ungrounded in social norms or community standards, is arbitrary, is unequally burdensome, or is not evenhandedly applied is A.H.’s burden — one that he has not met.
*589 The main controversy throughout this case, both below and on appeal, has been whether there is a fundamental right to choose the length of one’s hair. I agree with the court that there is not, so a student challenging a school rule regarding hair length bears the burden of proving it is not rationally related to a legitimate state interest — something A.H. has not done. We could and should end there and affirm. As the court acknowledges, both sides have completely ignored the applicable line of equal protection precedent. Maj. Op. at 578-79. However, if we do address equal protection on the current record of stipulations, we should still affirm. The parties have stipulated that a grooming policy applies to both boys and girls. They have supplied an example in the junior-high grooming policy, which is identical for boys and girls. A.H. has only pointed out a single difference — hair length — which precedent says is a legitimate, nondiscriminatory distinction. A.H. has only argued that the policies are not identical, but that is not enough. On the record we have, A.H. cannot meet the burden of proving an argument he has not made — that the policies are not comparable. Based on the stipulations, the policies are comparable. Because A.H. has failed to either argue or prove sex discrimination, his equal protection claims should fail. Since his Title IX claims depend on his proving sex discrimination, they fail as well. See 20 U.S.C. § 1681(a). Accordingly, I would affirm the district court. I concur in part but respectfully dissent in part and in the judgment.

. Even the sports that overlap have differences: a girls' basketball is smaller than a boys' basketball and a softball is bigger than a baseball — and despite the similarities of the sports, girls softball teams often wear shorts while-boys baseball teams must always wear baseball pants.

. It is no surprise that there is no hair-length requirement for the girls. Female athletes usually compete with their hair worn up in a ponytail, bun, or "knot top” so that it does not obstruct their vision or get snagged or tangled during encounters such as scrambling for a loose ball or a rebound. (A.H. does not allege a failure to evenhandedly enforce-on the girls team the requirement that hairstyles permit unobstructed vision). Unsurprisingly, the National Federation of State High School Associations ("NFHS”) Basketball rules— which Greensburg, as a member of the Indiana High School Athletics Association, follows — anticipate the reality of hair being worn up by providing that "[rjubber, cloth or elastic bands may be used to control hair.” But "[h]ard items, including but not limited to, beads, barrettes and bobby pins, are prohibited.” 2012-13 NFHS Basketball Rules Book, NFHS (2012), Rule 3-5, Art. 4, d. at 25 (previous editions have the same rule).

. Further, when deciding a case with as wide-ranging implications as this one — especially when the most recent precedents are thirty years old — we should be very reluctant to decide the case on the absence of some provisions applicable to girls. What is "comparáble” is only made more murky by the court’s opinion, when it could easily give a clear explanation if it would only expand the record to get what it thinks is missing, which it may do. See Fed. R.App. P. 10(e).